985 A.2d 1183

**Robert M. HIGGINBOTHAM, II**

v.

**PUBLIC SERVICE COMMISSION OF MARYLAND, et al.**

**No. 155 Sept.Term, 2008.**

Court of Appeals of Maryland.

Dec. 30, 2009.

Howard J. Schulman (Daniel P. Doty of Schulman & Kaufman, LLC, Baltimore, MD), on brief, for Appellant.

William F. Brockman, Deputy Sol. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on amicus curiae brief, for Appellees.

Brief of the State of Maryland as amicus curiae for Appellees Douglas F. Gansler, Esquire Attorney General of Maryland William F Brockman, Esquire Deputy Solicitor General Baltimore, MD

ARGUED BEFORE HARRELL, GREENE, MURPHY, ADKINS, BARBERA, JOHN C. ELDRIDGE (Retired, Specially Assigned), and IRMA S. RAKER (Retired, Specially Assigned), JJ.

MURPHY, Judge.

In this appeal from the Circuit Court for Baltimore City, Robert M. Higginbotham, II, Appellant,[1] presented the Court of Special Appeals with a single question:

> Does Maryland State Government Article § 12–106(b)(3), which requires that an action under the Maryland Tort Claims Act be filed within three years after the cause of action arises, create a uniform three-year statute of limitations for all tort actions brought pursuant to the Act, including defamation claims that otherwise would be subject to the one-year statute of limitations in Maryland Courts & Judicial Proceedings Article § 5–105?

Prior to argument before a panel of the Court of Special Appeals, this Court issued a writ of certiorari on its own initiative. 406 Md. 743, 962 A.2d 370 (2008). For the reasons that follow, we hold that the answer to this question is "yes" as to the defamation action asserted against the Public Service Commission, but "no" as to the defamation action asserted against Appellee Kenneth D. Schisler, the former Chair of the

---

1. Because no prior appellate decision has been rendered in the case at bar, the designation of the parties is controlled by Md. Rule 8–111(a)(1).

Public Service Commission, who was not sued within one year from the date that he allegedly defamed Appellant.

## Procedural History

Because the factual disputes between the parties is of no consequence to the issue presented in the case at bar, while it does no harm to point out that the parties have previously been before the Court of Special Appeals, which resolved some of their disputes in *Higginbotham v. PSC,* 171 Md.App. 254, 909 A.2d 1087 (2006), it would serve no useful purpose to set forth a detailed factual background. Suffice it to say that according to Appellant, in the words of his brief:

On April 15, 2004, large photographs of five Public Service Commission employees, including of Appellant Robert M. Higginbotham, II, were prominently posted in the lobby of the William Donald Schaefer Tower at the direction of then-Chairman Kenneth Schisler. These photographs were on display to the public through at least April 21, 2004. It as undisputed, and the Circuit Court determined, that [Appellant] was not on notice of the photographs for statute of limitations purposes until April 19, 2004.

On September 10, 2004, [Appellant] presented a claim to the Treasurer for defamation and other torts. The Treasurer denied the claim on October 19, 2004. On January 6, 2005, [Appellant] filed this action in the Circuit Court for Baltimore City ... alleging a number of claims; including, in Court V, defamation.

\* \* \*

On April 16, 2007, [Appellant] filed another ... Amended Complaint, which was captioned Corrected Amended Complaint.

\* \* \*

On the February 20, 2008 hearing on [Appellees'] renewed motion for summary judgment, the Circuit Court held that the one-year statute of limitations generally applicable to defamation actions under Courts & Judicial Proceedings § 5–105 applied over the three-year statute of

limitations applicable to tort claims filed under the MTCA pursuant to State Government § 12–106. The Circuit Court ruled that the Amended Complaint arose from separate and distinct facts and allegations than those alleged in the original complaint filed on January 6, 2005 and did not relate back for purposes of limitations. The Circuit Court then held that [Appellant] "knew or should have known on April 19th [2004] of the existing defamatory action" and, therefore, granted summary judgment in favor of [Appellees] because the Amended Complaint was filed more than one year (although less than three years) after April 19, 2004.

(Footnotes omitted).

Appellant's "Corrected Amended Complaint" added Mr. Schisler as an "individual capacity" defendant, and included a WHEREFORE clause seeking an award of money damages for which Mr. Schisler would be "personally" responsible. In the words of Appellant's Amended Complaint, "[Appellee] Schisler acted with malice, committed conscious and deliberate wrongs and also acted with an evil motive, as well as ill will and spite[.]"

According to Appellees, in the words of their brief:

While [Appellant] filed a notice of claim arising out of his termination with the State Treasurer in September 2004 and a lawsuit in January 2005, neither included a claim for the posting of the photograph. That claim first appeared in his Amended Complaint, filed on April [16], 2007, nearly three years later. [Appellant's] claim for defamatory posting of his photograph is thus barred by the one-year State of Limitations for defamation. The Maryland Tort Claims Act's ("MTCA") outer limit of three years for filing an action against the State, one of three conditions precedent to MTCA actions, does not save [Appellant] from the consequences of waiting two years past the expiration of the statute of limitations to file a claim based on the posting of the photograph.

The issue before us is one of statutory interpretation.

**118**

## Discussion

## I.

In *WCI v. Geiger*, 371 Md. 125, 807 A.2d 32 (2002), this Court stated:

Repeatedly, we have emphasized that "the paramount object of statutory construction is the ascertainment and effectuation of the real intention of the Legislature." *Whiting–Turner Contracting Co. v. Fitzpatrick*, 366 Md. 295, 301, 783 A.2d 667, 670 (2001). *See Robinson v. State*, 353 Md. 683, 694, 728 A.2d 698, 703 (1999); *Degren v. State*, 352 Md. 400, 417, 722 A.2d 887, 895 (1999); *Wesley Chapel v. Baltimore*, 347 Md. 125, 137, 699 A.2d 434, 440 (1997); *Oaks v. Connors*, 339 Md. 24, 35, 660 A.2d 423, 429 (1995). In seeking to ascertain legislative intent, we first look to the words of the statute, *see Mayor and City Council of Baltimore v. Chase*, 360 Md. 121, 126, 756 A.2d 987, 990 (2000); *Harris v. State*, 353 Md. 596, 606, 728 A.2d 180, 184 (1999); *Lewis v. State*, 348 Md. 648, 653, 705 A.2d 1128, 1131 (1998); *Marriott Employees Fed. Credit Union v. Motor Vehicle Admin.*, 346 Md. 437, 444–45, 697 A.2d 455, 458 (1997); *Stanford v. Maryland Police Training & Correctional Comm'n*, 346 Md. 374, 380, 697 A.2d 424, 427 (1997) *(quoting Tidewater v. Mayor of Havre de Grace*, 337 Md. 338, 344, 653 A.2d 468, 472 (1995)), viewing them "in ordinary terms, in their natural meaning, in the manner in which they are most commonly understood." *Derry v. State*, 358 Md. 325, 335, 748 A.2d 478, 484 (2000); *see also Sacchet v. Blan*, 353 Md. 87, 92, 724 A.2d 667, 669 (1999); *Whack v. State*, 338 Md. 665, 672, 659 A.2d 1347, 1350 (1995). "Where the statutory language is plain and free from ambiguity, and expresses a definite and simple meaning, courts do not normally look beyond the words of the statute itself to determine legislative intent." *Degren*, 352 Md. at 417, 722 A.2d at 895 (*citing Marriott Employees*, 346 Md. at 444–45, 697 A.2d at 458); *Kaczorowski v. Mayor of Baltimore*, 309 Md. 505, 515, 525 A.2d 628, 633 (1987); *Hunt v. Montgomery County*, 248 Md. 403, 414, 237 A.2d 35, 41 (1968). Nor may a court under those circumstances add or delete lan-

guage so as to "reflect an intent not evidenced in that language," *Condon v. State,* 332 Md. 481, 491, 632 A.2d 753, 755 (1993), or construe the statute with " 'forced or subtle interpretations' that limit or extend its application." *Id.* (*quoting Tucker v. Fireman's Fund Insurance Co.,* 308 Md. 69, 73, 517 A.2d 730, 732 (1986)).

\* \* \*

We have acknowledged that in determining a statute's meaning, courts may consider the context in which a statute appears, including related statutes and, even when a statute is clear, its legislative history. *See Morris v. Prince George's County,* 319 Md. 597, 604, 573 A.2d 1346, 1349 (1990); *see also Kaczorowski v. Mayor and City Council of Baltimore,* 309 Md. 505, 515, 525 A.2d 628, 633 (1987). We have cautioned, however, that this inquiry is "in the interest of completeness," *Harris* [*v. State,* 331 Md. 137, 146, 626 A.2d 946, 950 (1993)], "to look at the purpose of the statute and compare the result obtained by use of its plain language with that which results when the purpose of the statute is taken into account." *Id.* That inquiry, in other words, we emphasized in *Chase,* "is a confirmatory process; it is not undertaken to contradict the plain meaning of the statute." *Chase, supra,* 360 Md. at 131, 756 A.2d at 993; *see also Coleman v. State,* 281 Md. 538, 546, 380 A.2d 49, 54 (1977) ("a court may not as a general rule surmise a legislative intention contrary to the plain language of a statute or insert exceptions not made by the legislature.").

*Id.* at 140–43, 807 A.2d at 41–42.

■ The Maryland Tort Claims Act (MTCA) is presently codified in Subtitle 1 of Title 12 of the State Government Article (SG). Since October 1, 1995, SG § 12–106 has, in pertinent part, provided:

(b) A claimant may not institute an action under this subtitle unless:

(1) the claimant submits a written claim to the Treasurer or a designee of the Treasurer within 1 year after the injury to person or property that is the basis of the claim;

(2) the Treasurer or designee denies the claim finally; and

(3) the action is filed within 3 years after the cause of action arises.

This statute is neither unclear nor ambiguous. Appellees argue, however, that a defamation action filed pursuant to the MTCA must also comply with § 5–105 of the Courts and Judicial Proceedings Article (CJ 5–105), which requires that a defamation action "be filed within one year from the date it accrues." In *Walzer v. Osborne*, 395 Md. 563, 911 A.2d 427 (2006), this Court stated:

[T]he Legislature is presumed to have meant what it said and said what it meant. When the statutory language is clear, we need not look beyond the statutory language to determine the Legislature's intent.

\* \* \*

If the language of the statute is ambiguous, however, then "courts consider not only the literal or usual meaning of the words, but their meaning and effect in light of the setting, objectives and purpose of [the] enactment [under consideration]."

\* \* \*

When a statute can be interpreted in more than one way, " 'the job of this Court is to resolve that ambiguity in light of the legislative intent, using all resources and tools of statutory construction at our disposal.' " [*Chow v. State* 393 Md. 431, 444, 903 A.2d 388, 395 (2006)].

If the true legislative intent cannot readily be determined from the statutory language alone, however, we may, and often must, resort to other recognized indicia—among other things, the structure of the statute, including its title; how the statute relates to other laws; the legislative history, including the derivation of the statute, comments and explanations regarding it by authoritative sources during the legislative process, and amendments proposed or added to it; the general purpose behind the statute;

and the relative rationality and legal effect of various competing constructions.

> *Witte [v. Azarian]*, 369 Md. [518] at 525–26, 801 A.2d [160] at 165 [(2002)]. In construing a statute, "[w]e avoid a construction of the statute that is unreasonable, illogical, or inconsistent with common sense." *Blake v. State,* 395 Md. 213[, 224] 909 A.2d 1020[, 1026] (2006).

*Id.* at 572–73, 911 A.2d at 432.

A "look beyond the statutory language to determine the Legislature's intent" compels the conclusion that there is no merit in Appellees' argument. When we consider the context in which this statute appears, and its legislative history, we are persuaded that—although it initially intended that all MTCA actions were required to be filed within "the applicable statute of limitations"—the General Assembly "meant what it said and said what it meant" in 1994, when an amendment to SG § 12–106 imposed the requirement that all MTCA actions be "filed within 3 years after the cause of action arises."

When the Maryland Tort Claims Act was enacted in 1981, it was codified in Subtitle 4 of Title 5 of the Courts & Judicial Proceedings Article. Effective June 1, 1981, CJ 5–406(a), in pertinent part, provided:

> (1) ... [A]n action may not be instituted pursuant to this subtitle unless the claimant has first presented the claim in writing to the State Treasurer or his designee and the claim has been denied in writing sent to the claimant by certified or registered mail. The failure of the State to make final disposition of a claim within 6 months of receipt shall, at the option of the claimant, be deemed a final denial of the claim for purposes of this section.
>
> \* \* \*
>
> **(3) The filing of a claim tolls the applicable statute of limitations for a period of 60 days following a final denial if the claim was made within the applicable period of limitations.**

(Emphasis added). Although CJ 5–406 was amended in 1982, no change was made to § (a)(3).

In 1984, the General Assembly enacted the State Government Article, re-codified the Maryland Tort Claims Act in Subtitle 1 of Title 12 of that article, and amended the procedure for instituting MTCA actions. As of June 1, 1984, Sections 12–105 and 12–107 of the State Government Article, in pertinent part, provided:

12–105. Restrictions on Actions.

* * *

(B) Claim and denial required.

A claimant may not institute an action under this subtitle unless:

(1) The claimant submits a written claim to the Treasurer or a designee of the Treasurer; and

(2) The Treasurer or designee denies the claim finally.

* * *

12–107. Actions

**(A) Statute of Limitations.**

**If a claim under this subtitle is filed within the applicable period of limitations, the filing tolls the statute of limitations until 60 days after a final denial of the claim.**

(Emphasis added).

The "applicable period of limitations" restriction was eliminated when the MTCA was amended in 1985. As of July 1, 1985, Section 12–106 of the State Government Article, in pertinent part, provided:

(b) A claimant may not institute an action under this subtitle unless:

(1) the claimant submits a written claim to the Treasurer or a designee of the Treasurer within 180 days after the injury to person or property that is the basis of the claim;

(2) the Treasurer or designee denies the claim finally; and

**(3) the action is filed within 1 year after the claim is denied finally or 3 years after the cause of action arises, whichever is later.**

(Emphasis added).

Senator John C. Coolahan of Baltimore County, a lawyer/legislator who later served with distinction on the District Court of Maryland for Baltimore County, was the sponsor of Senate Bill 380, which was "Reported FAVORABLY WITH AMENDMENTS by the Committee on Judicial Proceedings on [March 15, 1985]." The SUMMARY OF COMMITTEE REPORT for that bill, prepared by the Department of Legislative Reference, included the following information:

CURRENT LAW—STATUTE OF LIMITATIONS

If a tort claim is filed, the statute of limitations stops running until 60 days after the State Treasurer renders a final denial of the claim.

CHANGES MADE BY THE BILL—STATUTE OF LIMITATIONS

S.B. 380 repeals this provision[ ] and establishes a requirement that a tort action against the State must be filed within 1 year after the State Treasurer finally denies the claim.

\* \* \*

LEGISLATIVE INTENT:

\* \* \*

The purpose of this bill is to clarify the legal uncertainty in the present law covering tort claims against the State.

The 1985 amendments did not clarify every uncertainty in the law. For example, in *Johnson v. Maryland State Police*, 331 Md. 285, 628 A.2d 162 (1993), this Court answered "no" to the question of whether "Maryland's general tolling statute for minors, § 5–201 of the Courts and Judicial Proceedings Article, should be applied to the 180–day requirement for filing a claim under the Maryland Torts Claims Act." *Id.* at 290, 628 A.2d at 164. In that case, although the plaintiffs filed their damage actions in the Circuit Court for Allegany County well

within both CJ 5–101 and then existing SG § 12–106(b)(3),[2] this Court held that the plaintiffs' failure to comply with "the 180–day administrative claim requirement" (then found in SG § 12–106(b)(1)) prohibited them from maintaining actions under the Maryland Tort Claims Act. In doing so, this Court stated:

> Contrary to the plaintiffs' argument, the Tort Claims Act's administrative claim requirement is not a statute of limitations. Instead, it is "a condition precedent to the initiation of an action under the Act." *Simpson v. Moore, supra,* 323 Md. [215] at 219, 592 A.2d [1090] at 1092 [(1991)].

*Id.* at 290, 628 A.2d at 164.

Thereafter, in *Condon v. State of Maryland–University of Maryland,* 332 Md. 481, 632 A.2d 753 (1993), this Court rejected the argument "that § 12–106(b)(3), which [then provided] that a claimant must file an action within one year after a claim is finally denied or three years after a cause of action arose, whichever is later, cannot be reconciled with § 12–107(d)(2)[, which then provided] that a claim is finally denied six months after it is filed if no written denial is received." *Id.* at 494–95, 632 A.2d at 759. In that case, the plaintiff complied with the then existing 180–day administrative claim requirement, and never did receive a "written notice" that his claim had been denied, but the Circuit Court for Prince George's County dismissed his complaint on the ground that it had been filed "more than three years and eleven months after the cause of action arose." *Id.* at 489, 632 A.2d at 756. While affirming the dismissal on the ground that SG § 12–107(d)(2) then provided that a claim is "finally" denied "if the Treasurer or designee fails to give notice of a final decision within 6 months after the filing of the claim[,]" this Court stated:

> In this case, we are asked not to apply the broad construction mandate to derive legislative intent where intent is

---

**2.** Under then existing SG § 12–106(b)(3), a claimant who had complied with the "180–day administrative claim requirement" was required to file the action "within 1 year after the claim is denied finally or the 3 years after the cause of action arises, whichever is later."

not clear from the language of the statute, but instead to infer an intent where the legislature has clearly indicated the contrary. We are asked, in effect, to apply a provision which the legislature expressly deleted from the MTCA in its 1985 amendments, that is, the provision allowing the claimant the option of when to consider the claim finally denied.

*Id.* at 497, 632 A.2d at 760.

SG § 12–106 was amended again in 1994. As of October 1, 1994, that statute, in pertinent part, provided:

(b) A claimant may not institute an action under this subtitle unless:

(1) the claimant submits a written claim to the Treasurer or a designee of the Treasurer within 180 days after the injury to person or property that is the basis of the claim;

(2) the Treasurer or designee denies the claim finally; and

(3) **the action is filed within 3 years after the cause of action arises.**

(Emphasis added).

The Department of Legislative Reference's 1994 SESSION REVIEW included the following synopsis:

**Limitations Period**

*House Bill 472* (passed) changes the limitations period for instituting an action under the Maryland Tort Claims Act so that a claimant is required to file suit within 3 years after the cause of action arises, regardless of when the Office of the Treasurer finally denies the claim.

This bill clarifies the limitations provision of the Maryland Tort Claims Act (MTCA), which provides the time frame for a claimant to file suit in court after a final denial of the claim by the Treasurer's Office. The existing law uses a dual standard which requires the claimant to file suit within the later of 1 year after a final denial of the claim by the Office of the Treasurer or 3 years after the cause of action arises.

This bill was introduced in response to the recent decision of the Court of Appeals in *Condon v. State of Maryland–*

*University of Maryland,* 332 Md. 481, 632 A.2d 753 (1993). **The bill is intended to eliminate confusion regarding the current law and to make the MTCA limitations consistent with the general statute of limitations under § 5–101 of the Courts Article, which requires that a civil action be filed within 3 years from the date the cause of action arises.**

(Emphasis added).

SG § 12–106 was amended again in 1995, but no change was made to § (b)(3). The 1995 SESSION REVIEW prepared by the Department of Legislative Reference includes the following synopsis:

MARYLAND TORT CLAIMS ACT

*Senate Bill 115* (passed) increases from 180 days to one year the period of time within which a claimant under the Maryland Tort Claims Act is required to submit a written claim.

\* \* \*

Under current law, a party, before instituting an action under the Maryland Tort Claims Act, must first submit a written claim to the Treasurer or a designee of the Treasurer within 180 days after the injury to person or property that is the basis of the claim. If the claim is denied, the claimant must institute an action in court within 3 years after the cause of action arises.

Both the location of SG § 12–106 in Subtitle 1 of Title 12 of the State Government Article, and a review of the MTCA's legislative history, reinforce the presumption that the General Assembly "meant what it said and said what it meant" when it repealed the "applicable period of limitations" restriction and enacted the requirement that an action under the MTCA be "filed within 3 years after the cause of action arises." According to Appellees, however, SG § 12–106(b)(3) is not a statute of limitations, but is merely a condition precedent to the State's waiver of sovereign immunity. If we agreed with that argument, which finds no support whatsoever in the legislative history, we would be adopting a construction of SG § 12–

106(b)(3) that is "unreasonable, illogical [and] inconsistent with common sense." *Condon, supra,* 332 Md. at 492, 632 A.2d. at 758.

In *State v. Sharafeldin,* 382 Md. 129, 854 A.2d 1208 (2004), this Court was presented with the question of whether "the General Assembly [intended] the requirement that an action subject to [SG] § 12–201 be filed within one year to be a condition to the waiver of sovereign immunity and thus a condition to the action itself, or merely a shorter statute of limitations that would otherwise apply to a breach of contract action?" *Id.* at 138, 854 A.2d at 1212. While answering "yes," to that question, this Court noted that statutes of limitations provide protections that can be waived, but sovereign immunity cannot:

> [W]e have regarded limitations as not "denying the plaintiff's right of action, but only the exercise of the right," *Foos v. Steinberg,* 247 Md. 35, 38, 230 A.2d 79, 80 (1967). Accordingly, we have held that limitations is an affirmative defense that can be waived and that *is* waived unless raised in the defendant's answer. *See* Maryland Rule 2–323(g); *Foos, supra; Brooks v. State,* 85 Md.App. 355, 365, 584 A.2d 82, 87 (1991) (Opinion by Bell, J.).

> In contrast, SG § 12–202 states that a claim under the subtitle "is barred" unless suit is filed within one year. That, we believe, was intended to preserve the effect of sovereign immunity itself, which barred the action entirely. In using that language, the Legislature could not have intended to permit subordinate agencies, or counsel for those agencies, to be able to permit an action that the Legislature expressly declared "barred" to proceed nonetheless, by simply omitting to raise the defense. That would effectively allow sovereign immunity to be waived by subordinate agencies or the attorneys who represent them which, as noted, we have consistently held they are not empowered to do.

*Id.* at 141, 854 A.2d at 1214.

In *Sharafeldin,* after quoting from *Blocher v. Harlow,* 268 Md. 571, 581, 303 A.2d 395, 400 (1973), which noted that

"[t]here is a substantial body of law to the effect that where a limitation period is stipulated in a statute creating a cause of action it is not to be considered as an ordinary statute of limitations, but is to be considered as a limitation upon the right as well as the remedy[,]" this Court stated:

> The 1976 law, now codified in SG §§ 12–201 and 12–202, was intended as a conditional waiver of the State's sovereign immunity in contract actions, which was to be accomplished by precluding the State and its agencies from raising that defense if the action was founded on a written contract executed by an authorized official or employee and the action was brought within the one-year period. If the action was not brought within that period, however, it was "barred." The sovereign immunity that the State enjoyed remained in effect; it could not be waived by subordinate agencies or their attorneys, and thus the agencies were required by law to raise the defense. We hold, therefore, that § 12–202 is not a mere statute of limitations but sets forth a condition to the action itself. The waiver of the State's immunity vanishes at the end of the one-year period, and an action filed thereafter is subject to the same fate it would have suffered prior to the enactment of the 1976 legislation.

*Id.* at 148–49, 854 A.2d at 1219.

The above quoted legislative history of SG § 12–106 is entirely consistent with the holding in *Sharafeldin.* We therefore hold that, like SG § 12–202, SG § 12–106(b)(3) is not a "mere" or "ordinary" statute of limitations, but is *both* a statute of limitations and—along with SG § 12–106(b)(1)—a condition precedent to the waiver of sovereign immunity. A holding that CJ 5–105 has remained applicable to MTCA assault and defamation claims asserted in full compliance with both SG § 12–106(b)(1) and § 12–106(b)(3) would (1) *require* that the plaintiff comply with both CJ 5–105 and SG § 12–106(b)(1) within the same period of time, and (2) *permit* a subordinate State agency to waive the affirmative defense of limitations with respect to claims asserted in compliance with SG § 12–106 but filed in court more than one year after the

cause of action arises. In light of the 1985 amendments to the MTCA that removed the "applicable period of limitations" restriction, such a holding would be unreasonable, illogical, and inconsistent with common sense, as well as totally inconsistent with the above quoted legislative history. As was the case in *Condon, supra,* we decline "to apply a provision which the legislature expressly deleted from the MTCA in its 1985 amendments[.]" 332 Md. at 497, 632 A.2d at 760.

We therefore (1) hold that the Circuit Court erred in its ruling that the defamation action asserted by Appellant on April 16, 2007 was "barred" by CJ 5–105 as to all Appellees, (2) vacate the judgments entered in favor of the Public Service Commission, and (3) remand for further proceedings not inconsistent with this opinion.

## II.

We shall affirm the judgments entered in favor of all of the other Appellees. Because the State has, subject to money limits that are of no consequence in the case at bar, granted immunity from liability in tort to tortious acts or omissions committed by its employees (1) within the scope of their employment, and (2) without malice or gross negligence, for reasons stated in *Larsen v. Chinwuba,* 377 Md. 92, 94–5 n. 1, 832 A.2d 193, 194 n. 1 (2003), and *Lee v. Cline,* 384 Md. 245, 261–62, 863 A.2d 297, 306–07 (2004), we hold that the present members of the Public Service Commission are entitled to immunity from suit. We also hold that the Circuit Court was correct in its ruling that CJ 5–105 does apply to the defamation action asserted against Mr. Schisler, the former Chair of the Public Service Commission, which sought an award of damages that Mr. Schisler would be "personally" responsible to pay. These holdings are in no way based upon the fact that the present members were sued in their "representative" capacity or that Mr. Schisler was sued in his "individual" capacity.

In *Ritchie v. Donnelly,* 324 Md. 344, 597 A.2d 432 (1991), this Court held "that the particular and confusing

**130**

[official/individual capacity] dichotomy developed in [42 USC] § 1983 cases has no application to actions against individual government officials for money damages based on violations of Maryland constitutional rights." *Id.* at 373–74, 597 A.2d at 446–47. That holding is equally applicable to intentional tort actions asserted against Maryland public officials. In such actions, it is of no consequence whether the Maryland public official is sued in his or her "official" capacity or "individual" capacity. What is of consequence is the question of whether the State or the public official will be responsible for the payment of any judgment. The answer to that question depends upon the findings made by the trier of fact on the issues of whether the public official (1) committed the alleged tort, (2) did so within the scope of his or her employment,[3] and (3) did so with actual malice towards the plaintiff.

In *Lee v. Cline,* 384 Md. 245, 863 A.2d 297 (2004), this Court reaffirmed the conclusion "that Maryland common law qualified immunity in tort suits, for public *officials* performing *discretionary* acts, has no application in tort actions ... based upon most so called 'intentional torts' [because the] Maryland public official immunity doctrine is quite limited and is generally applicable only in negligence actions or defamation actions based on allegedly negligent conduct." *Id.* at 258, 863 A.2d at 305. Because the case at bar involves a defamation action based on allegedly intentional conduct, although that alleged conduct was incident to Mr. Schisler's duties as Chair of the Public Service Commission, he would not have been entitled to public official immunity. The Maryland Tort Claims Act, however, provides statutory immunity "to insulate State employees generally from tort liability if their actions are within the scope of employment and without malice or

---

**3.** In *Larsen v. Chinwuba,* 377 Md. 92, 832 A.2d 193 (2003), this Court stated that, in determining scope of employment, the "key" question is whether the act at issue " 'was incident to the performance of the duties entrusted to him by the [employer][.]' " (Quoting from *Wood on Master and Servant* § 279 (1877)). *Id.* at 106, 832 A.2d at 202. Under this test, if Mr. Schisler did commit the tort alleged, he did so within the scope of his employment.

gross negligence." *Lee, supra,* 384 Md. at 261, 863 A.2d at 307. In *Lee,* this Court also held "that the immunity under the Maryland Tort Claims Act, if otherwise applicable, encompasses constitutional torts and intentional torts." *Id.* at 266, 863 A.2d at 310. Therefore, as stated above, whether the State will be responsible to pay any judgment will depend upon the findings made by the trier of fact.

If the trier of fact ultimately answers "yes" to the question of whether Appellant was defamed by Mr. Schisler, but answers "no" to the question of whether Mr. Schisler acted with actual malice towards Appellant, the Circuit Court will enter a judgment against the State in the amount of whatever damages are awarded to Appellant. On the other hand, if the trier of fact ultimately answers "yes" to the question of whether Appellant was defamed by Mr. Schisler, and "yes" to the question of whether Mr. Schisler acted with malice towards Appellant, the Circuit Court will enter a judgment in favor of the State—which has never waived sovereign immunity for actions of State employees that were (1) malicious, (2) grossly negligent, or (3)outside the scope of employment.

**JUDGMENTS OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED IN PART AND VACATED IN PART; JUDGMENTS IN FAVOR OF PRESENT AND FORMER MEMBERS OF THE PUBLIC SERVICE COMMISSION AFFIRMED; JUDGMENT IN FAVOR OF THE PUBLIC SERVICE COMMISSION OF MARYLAND VACATED; CASE REMANDED TO THE CIRCUIT COURT FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION; APPELLANT TO PAY 20% OF THE COSTS; 80% OF THE COSTS TO BE PAID BY THE PUBLIC SERVICE COMMISSION.**

Concurring and Dissenting Opinion by HARRELL, Judge, which RAKER, J., Joins.

I agree with the Majority opinion's reasoning and affirmance of the trial court's dismissal of Higginbotham's claims against the individual members of the Public Service Commis-

sion ("PSC"). I dissent, however, from the reversal of the judgment of dismissal as to the PSC. According to the Majority opinion's interpretation of Maryland Code, State Government Article [1] § 12–106(b)(3),[2] part of the Maryland Tort Claims Act ("MTCA"),[3] the State of Maryland enjoys considerably less protection from the initiation against it of untimely defamation actions than does any other potential defendant, exposing it to an additional two-year "window." The Majority opinion reaches this conclusion based primarily on the location of SG § 12–106(b)(3) within the SG Article and its review of the MTCA's legislative history. I disagree with that conclusion. Based on principles of sound statutory interpretation, sovereign immunity, and common sense, I would hold that the one-year statute of limitations generally applicable to defamation actions, contained in Maryland Code, Courts & Judicial Proceedings Article [4] § 5–105,[5] applies to bar Appellant's action against Appellee, the Public Service Commission, in addition to barring his action against Appellee Schisler and the other members of the PSC.

---

**1.** For the sake of consistency of citation format with the Majority opinion, the State Government Article hereafter will be abbreviated in the text as "SG."

**2.** Section 12–106(b), entitled "Restrictions on actions," provides:
(b) Claim and denial required.—A claimant may not institute an action under this subtitle unless:
(1) the claimant submits a written claim to the Treasurer or a designee of the Treasurer within 1 year after the injury to person or property that is the basis of the claim;
(2) the Treasurer or designee denies the claim finally; and
(3) the action is filed within 3 years after the cause of action arises.
MD.CODE ANN. (1984, 2004 Repl.Vol.), STATE GOV'T § 12–106(b).

**3.** MD.CODE ANN. (1984, 2004 Repl.Vol.), STATE GOV'T § 12–101, *et seq.*

**4.** The Courts & Judicial Proceedings Article will be abbreviated in the text as "CJ."

**5.** Section 5–105, entitled "Assault, libel, or slander," provides:
An action for assault, libel, or slander shall be filed within one year from the date it accrues.
MD.CODE ANN. (1974, 2006 Repl.Vol.), CTS & JUD. PROC. § 5–105.

## I. STATUTORY INTERPRETATION

*Condon v. State of Maryland–University of Maryland,* 332 Md. 481, 632 A.2d 753 (1993), is one of many cases where we describe the basic principles of statutory interpretation, including the importance of harmonizing seemingly contradictory statutes and avoiding nonsensical constructions:

The cardinal rule of statutory construction is to ascertain and carry out the true intentions of the legislature. In searching for legislative intention, a court looks for the general purpose, aim, or policy behind that statute. We first look to the plain meaning of the language of the statute to discern legislative intent. Where the language is clear and unambiguous, a court may not add or delete words to make a statute reflect an intent not evidenced in that language to avoid a harsh result. A clearly worded statute must be construed without 'forced or subtle interpretations' that limit or extend its application. The language must be examined in the context in which it was adopted. *All parts of a statute are to be read together to determine intent, and reconciled and harmonized to the extent possible.* If reasonably possible, a statute should be read so that no part of it is rendered nugatory or superfluous. Where a statute may be susceptible of more than one meaning, *the court may consider the consequences of each meaning and adopt that construction which avoids a result that is unreasonable, illogical or inconsistent with common sense.* If it often necessary to look at the development of a statute to discern legislative intent that may not be as clear upon initial examination of the current language of the statute.

*Id.* at 491–92, 632 A.2d at 757–58 (internal citations omitted) (emphasis added).

We also follow the admonition that "[w]here statutes relate to the same subject matter, and are not inconsistent with each other, they should be construed together and harmonized where consistent with their general object and scope." *Gwin v. Motor Vehicle Admin.,* 385 Md. 440, 462, 869 A.2d 822, 834 (2005). It is our "duty to read and construe overlapping

statutes together and in harmony." *Magnetti v. University of Maryland*, 402 Md. 548, 571, 937 A.2d 219, 233 (2007). We "presume that the legislature intended that both enactments operate together as a consistent and harmonious body of law...." *State v. Harris*, 327 Md. 32, 39, 607 A.2d 552, 555 (1992). "[W]henever reasonably possible, they must be construed to avoid repeal by implication of the earlier statute." *Id.*

When courts engage in statutory interpretation, a statute "must be given a reasonable interpretation, 'not one that is illogical or incompatible with common sense.'" *Smack v. Dep't of Health and Mental Hygiene*, 378 Md. 298, 305, 835 A.2d 1175, 1179 (2003). Whenever possible, "an interpretation should be given to the statutory provisions which does not lead to absurd consequences." *Barbre v. Pope*, 402 Md. 157, 172, 935 A.2d 699, 708 (2007). In determining such an interpretation, we may consider "the relative rationality and legal effect of various competing constructions." *Baltimore County v. RTKL Assocs. Inc.*, 380 Md. 670, 678, 846 A.2d 433, 438 (2004).

## II. SOVEREIGN IMMUNITY AND THE MTCA

The doctrine of sovereign immunity "bars individuals from bringing actions against the State, thus protecting it from interference with governmental functions and preserving its control over its agencies and funds." *Condon*, 332 Md. at 492, 632 A.2d at 758. The doctrine "is applicable to the State's agencies and instrumentalities, unless the legislature has explicitly or by implication waived governmental immunity." *Id.* When a governmental agency or actor is cloaked with and invokes the doctrine of sovereign immunity, "no contract or tort suit can be maintained thereafter against it unless the General Assembly has specifically waived the doctrine." *Magnetti*, 402 Md. at 557, 937 A.2d at 224. We have held that "immunity from suit is 'one of the highest attributes of sovereignty,' and that any waiver of that immunity must come from the Legislature." *State v. Sharafeldin*, 382 Md. 129, 140, 854 A.2d 1208, 1214 (2004). This Court "read[s] and 'construe[s] legislative dilution of governmental immunity narrowly in or-

der to avoid weakening the doctrine of sovereign immunity by judicial fiat.'" *Magnetti,* 402 Md. at 565, 937 A.2d at 229.

With enactment of the MTCA, the General Assembly generally "waived the State's immunity from liability in tort in a number of specified court actions, to the extent and in the amount that the State is covered by a program of insurance established by the State Treasurer...." *Harris,* 327 Md. at 34, 607 A.2d at 553. This waiver is limited, however, in that it applies only to certain categories of tort actions, does not cover certain kinds and levels of damages, and is "subject to certain conditions." *Gardner v. State,* 77 Md.App. 237, 239, 549 A.2d 1171, 1172 (1988); *Simpson v. Moore,* 323 Md. 215, 230–31, 592 A.2d 1090, 1097 (1991) (noting that under the MTCA, the "State waived its immunity, but imposed certain procedural requirements for the successful maintenance of a claim or action against it"). Section 12–106(b) of the SG Article, entitled "Restrictions on actions," provides those conditions which must be satisfied before the State's immunity from suit is waived:

> (b) Claim and denial required.—A claimant may not institute an action under this subtitle unless:
>
> > (1) the claimant submits a written claim to the Treasurer or a designee of the Treasurer within 1 year after the injury to person or property that is the basis of the claim;
> >
> > (2) the Treasurer or designee denies the claim finally; and
> >
> > *(3) the action is filed within 3 years after the cause of action arises.*

MD.CODE ANN. (1984, 2004 Repl.Vol.), SG ARTICLE § 12–106(b). In order to sue the State in tort, a plaintiff must demonstrate compliance with those conditions; if those conditions have not been fulfilled, the State retains its sovereign immunity.

## III. HOW THE FOREGOING PRINCIPLES OUGHT TO APPLY TO THE PRESENT CASE

Section 12–106(b)(3) of the SG Article states generally that a claim against the State will be barred unless "the action is

filed within 3 years after the cause of action arises." The Majority opinion reasons that this provision creates a uniform three-year statute of limitations for all tort claims brought against the State. I disagree and would hold instead that the plain language of § 12–106(b)(3) operates merely as a condition precedent to the State's waiver of sovereign immunity, rather than as a statute of limitations applicable to all claims brought against the State.

A condition precedent is a "condition attached to the right to sue at all" and "operates as a limitation of the liability itself as created, and not of the remedy alone." *Rios v. Montgomery County*, 386 Md. 104, 127, 872 A.2d 1, 14 (2005). "[W]here a limitation period is stipulated in a statute creating a cause of action, it is not to be considered as an ordinary statute of limitations, but is to be considered as a limitation upon the right as well as the remedy." *Waddell v. Kirkpatrick*, 331 Md. 52, 60, 626 A.2d 353, 357 (1993); *Sharafeldin*, 382 Md. at 148, 854 A.2d at 1219. Unlike a statute of limitations, a "condition precedent cannot be waived under the common law and a failure to satisfy it can be raised at any time because the action itself is fatally flawed if the condition is not satisfied." *Rios*, 386 Md. at 127, 872 A.2d at 14.

We consistently have found that SG § 12–202,[6] the equivalent of SG § 12–106(b)(3) applicable to contract suits against the State, "is not a mere statute of limitations [which can be waived] but sets forth a condition to the action itself." *Magnetti*, 402 Md. at 565, 568, 937 A.2d at 229, 231 (noting that § 12–202 is the "applicable condition precedent" to the bringing of a contract-based cause of action against the State). If the condition is not fulfilled because a claimant fails to bring his or her action within the specified period of time, the State's sovereign immunity is not waived and the plaintiff

---

**6.** Section § 12–202, entitled "Limitation on claims," provides:

A claim under this subtitle is barred unless the claimant files suit within 1 year after the latter of:
    (1) the date on which the claim arose; or
    (2) the completion of the contract that gives rise to the claim.
Md.Code Ann. (1984, 2004 Repl.Vol.), State Gov't § 12–202.

loses his or her right to maintain a claim against the State. *Id.* at 565, 937 A.2d at 229.

In *Sharafeldin,* we noted that SG § 12–202 "is not worded like the traditional statutes of limitation, which normally state only that an action 'shall be filed within' the allowable period." *Sharafeldin,* 382 Md. at 140, 854 A.2d at 1214. The traditional statutes of limitation, such as CJ §§ 5–101 and 5–105, generally "say nothing about an untimely action being 'barred' " and are subject to waiver if not raised by a defendant as an affirmative defense. *Id.* at 141, 854 A.2d at 1214. We reasoned that:

> [i]n contrast, SG § 12–202 states that a claim under the subtitle 'is barred' unless suit is filed within one year. That, we believe, was intended to preserve the effect of sovereign immunity itself, which barred the action entirely. In using that language, the Legislature could not have intended to permit subordinate agencies, or counsel for those agencies, to be able to permit an action that the Legislature expressly declared 'barred' to proceed nonetheless, by simply omitting to raise the defense. That would effectively allow sovereign immunity to be waived by subordinate agencies or the attorneys who represent them which, as noted, we have consistently held they are not empowered to do.

*Id.* As such, we concluded that SG § 12–202 is not a mere statute of limitations, but instead is a condition to the action itself. *Id.* at 148, 854 A.2d at 1219.

Similarly, Maryland's appellate courts repeatedly have opined that the "notice-of-claim" requirement contained in SG § 12–106(b)(1) is "a condition precedent to filing suit, *i.e.,* an act that must be fulfilled for immunity from suit to be waived, and thereby creating an otherwise non-existent right to sue, not a statute of limitations that places a time-bar on an already-existing right to sue." *State v. Copes,* 175 Md.App. 351, 372, 927 A.2d 426, 438 (2007); *Johnson v. Maryland State Police,* 331 Md. 285, 290, 628 A.2d 162, 164 (1993) (finding that "the Tort Claims Act's administrative claim requirement is not a statute of limitations" but rather "a condition precedent to

the initiation of an action under the Act"); *Harris,* 327 Md. at 41, 607 A.2d at 556–57 (finding the MTCA's notice of claim requirement to be "a condition precedent to the waiver of the State's sovereign immunity").

I submit that SG § 12–106(b)(3), like its counterpart in SG § 12–202, is a condition precedent to bringing suit against the State, rather than a statute of limitations.[7] The MTCA created both the right to sue the State in tort and the potential remedy of a damage award against the State. As declaimed in *Waddell* and *Sharafeldin,* where a statute containing a limitation period creates both the right and the remedy, the limitation period constitutes a condition precedent to maintaining suit, not merely a statute of limitations subject to waiver if not raised by the defendant as an affirmative defense. As such, SG § 12–106(b)(3) mandates that a failure to bring suit against the State within three years eliminates both the right to sue and the remedy for the injury caused. It is not subject to waiver, and a failure to fulfill the condition precedent may be raised by the State at any time. In this manner, SG § 12–106(b)(3) constitutes a condition precedent to the waiver of the State's sovereign immunity, distinct from any statute of limitations governing the asserted claims.

In addition, SG § 12–106(b)(3) uses similar language to that of SG § 12–202, stating that a claimant "may not institute an action under this subtitle" unless the conditions are fulfilled. As observed in *Sharafeldin,* this type of language differs significantly from that of standard statutes of limitation, such as CJ § 5–105, which generally provide only that an action "shall" be filed within a certain period of time. This linguistic difference signals a condition precedent, not a statute of limitations. Based on this distinction, SG § 12–106(b)(3) is a condition precedent, rather than a statute of limitations, and

---

7. Although the Legislature, through staff-created records of the various legislative proceedings, may have referred from time to time in its legislative history to SG § 12–106(b)(3) as a statute of limitation, we held that such casual references do not establish conclusively that a particular provision is a technical statute of limitations, rather than a condition precedent. *See, e.g., Waddell,* 331 Md. at 61, 626 A.2d at 357.

provides an additional limitation on the right to sue the State. The condition precedent of SG § 12–106(b)(3) works in concert with the statute of limitations period for defamation suits contained in CJ § 5–105, rather than supplanting it entirely.

It is our duty, noted *supra,* to harmonize seemingly contradictory provisions and avoid illogical or absurd results. We must recall the importance of the State's sovereign immunity and prevent the dilution of the doctrine "by judicial fiat." Under the Majority opinion's interpretation of SG § 12–106(b)(3), a plaintiff asserting a defamation claim may sue the State at any point within a three-year period, whereas that same plaintiff bringing the same cause of action against a private defendant must do so within one year. Such a result is contrary to common sense and undermines significantly the State's sovereign immunity.

By understanding SG § 12–106(b)(3) as a condition precedent to the State's waiver of sovereign immunity, rather than a uniform statute of limitations for all claims brought against the State, SG § 12–106(b)(3) and CJ § 5–105 may be harmonized, thus avoiding dilution of the State's sovereign immunity protection. Under this interpretation, SG § 12–106(b) provides three conditions precedent that must be fulfilled by a plaintiff before the State consents to waive its sovereign immunity. A prospective plaintiff must demonstrate fulfillment of those conditions before he or she may maintain an action against the State. If he or she meets those conditions, the claim remains subject to the statutes of limitations contained in CJ § 5–101, *et seq.,* including the one-year statute of limitations for defamation actions provided by CJ § 5–105. This reading allows both the conditions precedent of SG § 12–106(b) and the statutes of limitation contained in CJ § 5–101, *et seq.,* to exist together harmoniously and provide separate restrictions on defamation actions against the State. Additionally, this reading recognizes the important protections of sovereign immunity because, unlike a plaintiff suing a private party in defamation, a plaintiff seeking to sue the State in defamation must face the additional hurdle of demonstrating compliance with the conditions of SG § 12–106(b) before the

State may be said to have waived sovereign immunity. Otherwise, under the Majority opinion, the State enjoys less protection from defamation suits than a private defendant, a conclusion that undermines significantly the doctrine of sovereign immunity and, I submit, defies common sense. Therefore, I decline to read SG § 12–106(b)(3) to reach such a strange and facially illogical result, absent clearer evidence of a legislative intent to abrogate the one-year statute of limitations on defamation actions contained in CJ § 5–105 and replace it with a longer three-year statute of limitations for actions brought only against the State.

## IV. CONCLUSION

Under my reading of SG § 12–106(b)(3), when a defamation suit is brought against the State (here, the PSC), a plaintiff must file suit within the applicable statute of limitations found in CJ § 5–105 and additionally demonstrate that the conditions precedent contained in SG § 12–106(b)(3) have been fulfilled. Contrary to the Majority's view, I maintain that SG § 12–106(b)(3) does not replace the statute of limitations applicable to all defamation suits against defendants and instead acts merely as a condition precedent to the State's waiver of sovereign immunity. For this reason, Appellant's failure to bring suit within the one-year statute of limitations provided by CJ § 5–105 bars his defamation claim against the State, despite his timely compliance with the conditions precedent demanded by SG § 12–106(b)(3). Accordingly, I would affirm entirely the judgment of the Circuit Court for Baltimore City, which dismissed Higginbotham's complaint against all of the defendants.

Judge RAKER authorizes me to state that she joins this concurring and dissenting opinion.

ELDRIDGE, Judge, dissenting in part and concurring in part.

In my view, the novel question raised by the plaintiff-appellant, and debated in the majority opinion and Judge

Harrell's dissenting opinion, is not presented by the record in this case. The issue of whether a one-year or a three-year period of limitations is applicable in defamation actions under the Maryland Tort Claims Act, Maryland Code (1984, 2009 Repl.Vol.), § 12–101 *et seq.* of the State Government Article, is properly presented only if this case is actually an action under that statute. Although the plaintiff labeled Count I of his corrected amended complaint as an action under the Maryland Tort Claims Act, the body of the complaint makes it clear that this is *not* an action under the Act.[1] Instead, the action against the Public Service Commission was barred by sovereign immunity. Moreover, no additional documents filed by the plaintiff, including those filed in response to the defendants' motion for summary judgment, changed the nature of the plaintiff's action as set forth in the complaint.

The only cause of action which the plaintiff possibly had was Count II of the complaint, titled "Individual Liability for Defamation." I agree with Judges Harrell and Murphy that this alleged cause of action against Kenneth D. Schisler was prohibited by the one-year statute of limitations applicable to defamation actions. *See* Maryland Code (1974, 2006 Repl. Vol.), § 5–105 of the Courts and Judicial Proceedings Article.

I.

The Maryland Tort Claims Act is codified in §§ 12–101 through 12–110 of the State Government Article of the Maryland Code and § 5–522 of the Courts and Judicial Proceedings Article of the Maryland Code. Section 12–104 of the State Government Article waives the sovereign immunity of the State and state agencies in tort actions, subject to several exclusions and limitations. When an action falls within one of those exclusions or limitations, "[i]mmunity is not waived"

---

1. The record in this case shows that the plaintiff filed a complaint, an amended complaint, and a corrected amended complaint. As indicated in Judge Murphy's opinion for the Court, the corrected amended complaint is the viable pleading setting out the plaintiff's asserted cause of action. In this opinion, the word "complaint" will refer to the corrected amended complaint.

(§ 12–104(b) of the State Government Article). Section 12–104(a) and (b) thus provides as follows:

" § 12–104. **Waiver of immunity.**

(a) *In general.*—(1) Subject to the exclusions and limitations in this subtitle and notwithstanding any other provision of law, the immunity of the State and of its units is waived as to a tort action, in a court of the State, to the extent provided under paragraph (2) of this subsection.

(2) The liability of the State and its units may not exceed $200,000 to a single claimant for injuries arising from a single incident or occurrence.

(a) *Exclusions and limitations.*—Immunity is not waived under this section as described under § 5–522(a) of the Courts and Judicial Proceedings Article."

* * *

Section 5–522(a) of the Courts and Judicial Proceedings Article states as follows (emphasis added):

" § 5–522. **Immunity—State and its personnel and units.**

(a) *Tort liability—Exclusions from waiver under § 12–104 of the State Government Article.*—Immunity of the State is not waived under § 12–104 of the State Government Article for:

(1) Punitive damages;

(2) Interest before judgment;

(3) A claim that arises from the combatant activities of the State Militia during a state of emergency;

(4) Any tortious act or omission of State personnel that:

(i) Is not within the scope of the public duties of the State personnel; or

*(ii) Is made with malice* or gross negligence;

(5) A claim by an individual arising from a single incident or occurrence that exceeds $200,000; or

(6) A cause of action that law specifically prohibits."

* * *

Consequently, as the statutory language clearly states, a purported action under the Maryland Tort Claims Act, based on a tortious act or omission of State personnel that "[i]s made with malice," is excluded from the Tort Claims Act's waiver of sovereign immunity and is not covered by the statute. The principle, that no action can be maintained against the State or its agencies under the Maryland Tort Claims Act when the action is based on State personnel conduct falling within an exclusion set forth in the Act, has been recognized by this Court in numerous cases. *See, e.g., Newell v. Runnels*, 407 Md. 578, 635–639, 967 A.2d 729, 762–765 (2009); *Barbre v. Pope*, 402 Md. 157, 173–175, 935 A.2d 699, 709–710 (2007); *Lee v. Cline*, 384 Md. 245, 255–258, 863 A.2d 297, 303–305 (2004); *Shoemaker v. Smith*, 353 Md. 143, 157–158, 725 A.2d 549, 557 (1999); *Ritchie v. Donnelly*, 324 Md. 344, 374–375 n. 14, 597 A.2d 432, 446–447 n. 14 (1991); *Sawyer v. Humphries*, 322 Md. 247, 261–262, 587 A.2d 467, 474 (1991).

Furthermore such an action, against the State or its agencies, is barred by sovereign immunity unless some other enactment by the General Assembly has waived that immunity. *See Barbre v. Pope, supra*, 402 Md. at 175, 935 A.2d at 710 ("[T]he State does not waive its sovereign immunity for any tortious acts ... when a 'state personnel' acts with malice"); *Johnson v. Maryland State Police*, 331 Md. 285, 296, 628 A.2d 162, 167 (1993) (The Tort Claims Act provides for only a "partial or conditional waiver of sovereign immunity").

In addition, the Public Service Commission's reliance upon the statute of limitations argument, rather than upon the coverage of the Tort Claims Act and sovereign immunity, is not a pertinent factor. The "law is well established that counsel for the State or one of its agencies may not either by affirmative action or by failure to plead the defense, waive the defense of [sovereign] immunity," *Board of Education v. Alcrymat Corp.*, 258 Md. 508, 516, 266 A.2d 349, 353 (1970). Moreover, as Judge Orth stated for this Court in *Board v. John K. Ruff, Inc.*, 278 Md. 580, 583, 366 A.2d 360, 362 (1976), "[w]e must consider whether the doctrine of sovereign immunity is applicable in [a] case even though it was not previously

raised by the parties." *See, e.g., Johnson v. Maryland State Police, supra,* 331 Md. at 299, 628 A.2d at 169 (Sovereign " 'immunity is a non-waivable defense' "); *Kee v. State Highway Admin.,* 313 Md. 445, 460, 545 A.2d 1312, 1320 (1988); *Calvert Associates v. Department,* 277 Md. 372, 378, 357 A.2d 839, 842 (1976); *Chas. E. Brohawn & Bros. v. Board,* 269 Md. 164, 166, 304 A.2d 819, 820 (1973).

## II.

Under Maryland law, a defamation action cannot be maintained unless the plaintiff alleges and proves that the defamatory statement is false and that the defendant, in making the statement, was guilty of actual malice or negligence. There can "be no recovery without fault in any defamation action." *Telnikoff v. Matusevitch,* 347 Md. 561, 593, 702 A.2d 230, 246 (1997). *See General Motors Corp. v. Piskor,* 277 Md. 165, 175, 352 A.2d 810, 817 (1976); *Jacron Sales Co. v. Sindorf,* 276 Md. 580, 594–597, 350 A.2d 688, 696–698 (1976).

Moreover, as a matter of Federal and Maryland constitutional law, if the plaintiff in a defamation action is a public official or public figure, the plaintiff may recover only if the defamatory statement was made with "actual malice." *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); *Curtis Publishing Co. v. Butts,* 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967); *Le Marc's Management Corp. v. Valentin,* 349 Md. 645, 650, 709 A.2d 1222, 1225 (1998); *Telnikoff v. Matusevitch, supra,* 347 Md. at 590–591, 702 A.2d at 244–245; *Chesapeake Pub. v. Williams,* 339 Md. 285, 295, 661 A.2d 1169 (1995); *Batson v. Shiflett,* 325 Md. 684, 722, 602 A.2d 1191, 1210 (1992); *Jacron Sales Co. v. Sindorf, supra,* 276 Md. at 584–585, 350 A.2d at 691.

Turning to the present case, the complaint discloses that the plaintiff Higginbotham "was employed by Defendant Public Service Commission of the State of Maryland as a Special Assistant, Contract Manager and Public Information Officer Administrator III . . . ." If, in light of his position, the plaintiff qualifies as a "public official" or "public figure," he may not, as

a matter of law, bring a defamation action under the Maryland Tort Claims Act. As pointed out above, a public official or public figure can maintain a defamation action only if the defamatory statement or statements were made with actual malice. Nevertheless, no tort action will lie under the Maryland Tort Claims Act when the state personnel acted with actual malice. Consequently, as a matter of logic, a public official or public figure may not bring a defamation action under the Maryland Tort Claims Act. The State and the pertinent state agency will be clothed with sovereign immunity.

If we assume, however, that the plaintiff Higginbotham was not a public official or public figure when the alleged defamation occurred, the result would be the same. The plaintiff's action under the Maryland Tort Claims Act was based entirely upon the conduct of the defendant Kenneth D. Schisler, who was Chairman of the Public Service Commission and the person who allegedly "fired [the plaintiff] without warning and without cause or reason." The complaint throughout charges that Schisler acted maliciously. The complaint states:

"12. Defendant Schisler made or directed false statements and accusations to be made about Plaintiff to cover up for his illegal acts in terminating the employment of Plaintiff, knowing such statements to be false, or, alternatively, made such statements with reckless disregard for the truth, which said statements impugned Plaintiff's professional reputation, thereby harming the character and reputation of Plaintiff. . . ."

The complaint goes on to state that Schisler "caused Plaintiff's photograph to be posted in the lobby of the Schaefer Office Tower in public view, thereby impugning Plaintiff's business reputation and suggesting criminal and other wrongful conduct on his part." The complaint continued by asserting

"that Defendant Schisler acted with malice or was grossly negligent. Defendant Schisler committed conscious and deliberate wrongs and also acted with an evil motive, as well as ill will and spite. . . ."

According to the plaintiff, "Schisler was aware of and knew that the discharges in question ... were illegal under clearly-established law ...," and that "Schisler concealed his intent to terminate Plaintiff ... and did so without the knowledge of the other Commission members." The plaintiff claimed that "Schisler participated in an artifice and ruse to purport to ratify the ... termination of Plaintiff...." Neither the complaint nor any subsequent document submitted by the plaintiff contains any hint that Schisler or any other state personnel acted with ordinary negligence.

In numerous cases this Court has held that, within the meaning of the Maryland Tort Claims Act,

> "malice is defined as behavior 'characterized by evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill-will or fraud.' *Barbre*, 402 Md. at 182, 935 A.2d at 714 (quoting *Lee v. Cline*, 384 Md. 245, 268, 863 A.2d 297, 311 (2004))...."

*Newell v. Runnels, supra*, 407 Md. at 638, 967 A.2d at 763. *See also, e.g., Okwa v. Harper*, 360 Md. 161, 181–182, 757 A.2d 118, 129 (2000); *Shoemaker v. Smith, supra*, 353 Md. at 163–164, 725 A.2d at 560; *Sawyer v. Humphries, supra*, 322 Md. at 261, 587 A.2d at 474.

Under the above definition, or any other definition of "malice," the plaintiff's action under the Maryland Tort Claims Act was entirely based on the allegedly malicious conduct of state personnel. Therefore, the action was excluded from the Tort Claims Act, and the Public Service Commission could not be sued because of sovereign immunity.

### III.

With respect to the Maryland Tort Claims Act count in the complaint, affirmance of the trial court's judgment, on a ground other than limitations, might seem at first glance to present a procedural problem. Nevertheless, upon analysis, as well as this Court's prior opinions, there is no procedural bar to deciding that Count I, on its face, was not an action

under the Tort Claims Act and that the action against the Public Service Commission was barred by sovereign immunity.

The Circuit Court's final judgment in this case, in accordance with Maryland Rule 2–601, was as follows:

## *"ORDER*

Upon consideration of the Defendants Public Service Commission of Maryland ("PSC") and Kenneth D. Schisler's Renewed Motion to Dismiss, or, in the alternative, Motion for Summary Judgment and memorandum, review of the court file, and argument of the parties, it is this 21st day of February, 2008, by the Circuit Court for Baltimore City, hereby **ADJUDGED**

That this Court finds, as more fully stated on the record in open Court on February 19, 2008, which is hereby incorporated by reference, that Plaintiff knew or should have known as of April 19, 2004, of the injury claimed, and the claim(s) in the Amended Complaint filed by the Plaintiff on April 16, 2007, is barred by the Statute of Limitations, and that the Amended Complaint does not relate back to the original complaint filed January 6, 2006. And it is,

**ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED.** And further,

**ORDERED,** that judgment be entered in favor of the Defendants and against the Plaintiff.

Costs to be paid by Plaintiff."

The trial court, in the first two paragraphs of the above-quoted order, referred to both the motion to dismiss and the motion for summary judgment, and decided that the "claim(s) in the Amended Complaint filed by the Plaintiff . . . is barred by the Statute of Limitations. . . ." The next line of the judgment, however, granted the motion for summary judgment. There was no express ruling on the motion to dismiss.

It is a "rule of Maryland procedure that, in appeals from grants of summary judgment, Maryland appellate courts, *as a general rule,* will consider only the grounds upon which the [trial] court relied in granting summary judgment." *Lovelace*

*v. Anderson,* 366 Md. 690, 695, 785 A.2d 726, 729 (2001) (emphasis added, internal quotation marks deleted). *See, e.g., Gourdine v. Crews,* 405 Md. 722, 736, 955 A.2d 769, 777–778 (2008); *Bednar v. Provident Bank,* 402 Md. 532, 542, 937 A.2d 210, 216 (2007); *Ross v. Board of Elections,* 387 Md. 649, 659, 876 A.2d 692, 698 (2005); *Eid v. Duke,* 373 Md. 2, 10, 816 A.2d 844, 849 (2003); *Gresser v. Anne Arundel County,* 349 Md. 542, 552, 709 A.2d 740, 745 (1998); *Boyer v. State,* 323 Md. 558, 588, 594 A.2d 121, 136 (1991).

The principle, that an appellate court reviews the grant of summary judgment on the ground relied upon by the trial court, is far from absolute. This Court's opinions regularly qualify the principle. *See Lovelace v. Anderson, supra,* 366 Md. at 696, 785 A.2d. at 729 (The " 'appellate court will not *ordinarily*' " affirm summary judgment on a ground not ruled upon by the trial court) (emphasis added); *Gresser v. Anne Arundel County, supra,* 349 Md. at 552, 709 A.2d at 745 (" 'Where the judgment appealed from is entered on motion for summary judgment, the appellate court *ordinarily* will review only the issue decided by the circuit court,' " quoting *T.H.E. Ins. v. P.T.P. Inc.,* 331 Md. 406, 409 n. 2, 628 A.2d 223, 224 n. 2 (1993), emphasis added); *Boyer v. State, supra,* 323 Md. at 588, 594 A.2d at 136 (same); *Three Garden v. USF & G,* 318 Md. 98, 107–108, 567 A.2d 85, 89 (same); *Geisz v. Greater Baltimore Medical Center,* 313 Md. 301, 314 n. 5, 545 A.2d 658, 664 n. 5 (1988) (same).

This Court has recognized that the principle discussed above is inapplicable under various circumstances. For example, when the ground relied upon by the trial court in granting summary judgment and the alternate ground are interrelated, the principle has not been applied. *Eid v. Duke, supra,* 373 Md. at 10, 816 A.2d at 849; *Ross v. Board of Elections, supra,* 387 Md. at 659, 876 A.2d at 698. The principle is inapplicable when "exceptional circumstances" are present. *Gresser v. Anne Arundel County, supra,* 349 Md. at 552, 709 A.2d at 745.

Another exception to the principle was set forth by Judge Rodowsky for the Court in *Geisz v. Greater Baltimore Medi-*

*cal Center, supra,* 313 Md. at 314 n. 5, 545 A.2d at 664 n. 5 (emphasis added):

"On an appeal from the grant of a summary judgment which is reversible because of error in the grounds relied upon by the trial court the appellate court will not ordinarily undertake to sustain the judgment by ruling on another ground, not ruled upon by the trial court, *if the alternative ground is one as to which the trial court had a discretion to deny summary judgment.*"

The above-quoted language from *Geisz* has since been reaffirmed by this Court. *See Lovelace v. Anderson, supra,* 366 Md. at 696, 785 A.2d at 729; *Three Garden v. USF & G, supra,* 318 Md. at 107–108, 567 A.2d at 89–90.

In the present case, although the trial court designated the motion for summary judgment as the motion being granted, the court's action was based upon the complaint. It was, in substance, no different from a grant of the motion to dismiss.

Moreover sovereign immunity, where applicable, is a threshold bar to the action against the State or a state agency. In addition, sovereign immunity is a much less debatable ground in this case than the limitations issue which has divided the Court. Even if the trial court's action is treated as a grant of summary judgment, the sovereign immunity alternative ground is *not* "one as to which the trial court had a discretion to deny summary judgment." *Geisz v. Greater Baltimore Medical Center, supra,* 313 Md. at 314 n. 5, 545 A.2d at 664 n. 5. Furthermore, "exceptional circumstances" are present in this case.

Accordingly, I would not reach the Tort Claims Act limitations issue. Instead, with regard to the trial court's judgment in favor of the Public Service Commission, I would uphold the judgment on the ground of sovereign immunity.