John J. **SURRE**, Plaintiff,

v.

**FOSTER WHEELER LLC, Crane Co., Oakfabco, Inc., and Weil–McLain, Inc., Defendants.**

No. 07 Civ. 9431 (DC).

United States District Court, S.D. New York.

Dec. 20, 2011.

Weitz & Luxenberg, by Alani Golanski, Esq., New York, NY, for Plaintiff.

K & L Gates LLP, by Angela DiGiglio, Esq., New York, NY, for Defendant Crane Co.

## MEMORANDUM DECISION

CHIN, Circuit Judge.

Plaintiff John Surre alleges that he developed mesothelioma as a result of his exposure to asbestos-containing materials while working for the United States Navy and Quality Insulation. Defendant Crane Co.—one of dozens of original defendants to this action—is an industrial product manufacturer, founded in 1855. Crane supplied Pacific-brand boilers to which Surre applied asbestos insulation during his work with Quality Insulation. Although Crane did not manufacture or supply the asbestos insulation to which Surre was exposed, Surre nonetheless maintains that Crane had a duty to warn him against the dangers of asbestos exposure.

Before the Court is Crane's motion for summary judgment dismissing Surre's claims against it.[1] Crane argues that, as a

---

1. This action was discontinued with prejudice as to Defendant Foster Wheeler on October 16, 2011. (Doc. 24). Defendants Oakfabco and Weil–McLain have not moved for summary judgment.

matter of law, it had no duty to warn Surre against the dangers of asbestos insulation that it neither manufactured nor placed into the stream of commerce. Surre opposes Crane's motion, asserting that Crane had a duty to warn against the dangers of asbestos exposure because it knew, or had reason to know, that asbestos insulation would be applied to the exterior of Pacific boilers.

For the reasons stated below, Crane's motion for summary judgment is GRANTED. The complaint is dismissed as to Crane.

## BACKGROUND

### A. *Facts*

On a motion for summary judgment, the Court construes the evidence in the light most favorable to the non-moving party. The following facts are drawn from Surre's deposition, a stipulation, and exhibits submitted by the parties.

Surre served in the United States Navy from February 1957 to February 1959. (Pl.'s 10/9/07 Dep. at 28). He was exposed to asbestos-containing insulation materials while performing equipment maintenance on the U.S.S. Cassin Young. (*Id.* at 45–54, 61–63, 71–73). Surre was unable, however, to identify Crane as the manufacturer of any of the equipment or insulation to which he was exposed in the Navy. (*Id.; see also* Doc. 7, Ex. 37 (the "Stipulation"), ¶ 7).

From 1963 to 1964, Surre worked as an apprentice insulator with Quality Insulation in New York. (Pl.'s 10/9/07 Dep. at 134). There, he applied insulation to Pacific boilers in various apartment buildings in New York City. (*Id.* at 138–39). Surre "was exposed to asbestos from his use of asbestos-containing block and asbestos-containing cement which he applied to the outside surface of Pacific boilers" while working for Quality Insulation. (Stipulation ¶ 1).

Crane sold Pacific boilers. Surre, however, has "no proof that [Crane] supplied the asbestos block and asbestos cement that [he] used on the Pacific boilers." (*Id.* ¶ 6). Furthermore, the Pacific boilers to which Surre applied insulation were new and were being installed for the first time. (*Id.* ¶ 4). Surre "was not exposed to any asbestos from products or components internal to the Pacific boilers." (*Id.* ¶ 5).

Through at least 1952, Crane promoted the use of asbestos to insulate its products, including boilers. First, a Crane pamphlet for a "Study Course for Company Employees," dated 1925, discussed the use of insulation to reduce heat loss. It listed various materials that might be used for insulation, including "asbestos ..., magnesia, felt, cork, wood fibre and hair." (Doc. 20, Ex. 21 at 7). Second, a Crane brochure, purportedly from 1949,[2] advertised a "Basmor" boiler that was "fully insulated with asbestos." (Doc. 20, Ex. 22 at 19). Third, a 1952 Crane catalog stated that Johns–Manville asbestos blocks were "[i]deal [insulation] for boilers." (Doc. 20, Ex. 23 at 9).

### B. *Procedural History*

Surre filed a complaint in the Supreme Court of the State of New York, New York County, on September 18, 2007. Defendant Foster Wheeler removed the case to this Court on October 22, 2007. (Doc. 1). On December 21, 2007, the case was transferred to a multidistrict litigation in the

---

2. Surre's opposition brief states that this brochure is from 1949 (Pl.'s S.D.N.Y. Opp'n at 19), but the date is not evident from the face of the exhibit. Nonetheless, for the purposes of this motion, I accept Surre's representation.

Eastern District of Pennsylvania (the "MDL"). (Doc. 5).

On June 7, 2010, while the case was before the MDL, Crane made the present motion for summary judgment. Judge Robreno, of the Eastern District of Pennsylvania, granted Crane's motion with respect to Surre's claims arising out of his work for the Navy because Surre "concedes that he has no proof that Crane manufactured, sold, or supplied the valves on board the U.S.S. Cassin Young." (Doc. 7, Ex. 82 at 7). Judge Robreno denied, without prejudice, Crane's motion with respect to Surre's claims arising out of his work at Quality Insulation, and referred those claims back to this Court because Crane's defense involved a question of New York law that is "not settled." (Doc. 7, Ex. 89 at 2 n. 1). Surre does not challenge Judge Robreno's grant of summary judgment on the claims arising out of his service in the Navy.

This Court held a status conference on September 15, 2011, and ordered supplemental briefing on Crane's motion. It heard oral argument on November 21, 2011, and reserved decision.

## DISCUSSION

### A. *Applicable Law*

#### 1) *Summary Judgment Standard*

The standards governing motions for summary judgment are well-settled. A court may grant summary judgment only where there is no genuine issue of material fact and the moving party is therefore entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a); *accord Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Summary judgment should be denied "if the evidence is such that a reasonable jury could return a verdict" in favor of the non-moving party.

*See NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 178 (2d Cir.2008). In deciding a motion for summary judgment, the court must construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *In re "Agent Orange" Prod. Liab. Litig.*, 517 F.3d 76, 87 (2d Cir.2008). The non-moving party cannot, however, "escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture." *W. World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir.1990) (citations and internal quotation marks omitted).

### 2) *Failure to Warn*

■ Under New York law, to succeed on a failure to warn claim in a products liability case, a plaintiff must demonstrate that "(1) Defendant had a duty to warn, (2) Defendant breached that duty, (3) the defect was the proximate cause of Plaintiff's injury, and (4) Plaintiff suffered damages as a result of the breach." *Adebiyi v. Yankee Fiber Control, Inc.*, 705 F.Supp.2d 287, 290 (S.D.N.Y.2010).

■ A "manufacturer has a duty to warn against latent dangers resulting from foreseeable uses of its product of which it knew or should have known." *Liriano v. Hobart Corp.*, 92 N.Y.2d 232, 238, 677 N.Y.S.2d 764, 700 N.E.2d 303 (1998); *see also Rastelli v. Goodyear Tire & Rubber Co.*, 79 N.Y.2d 289, 297, 582 N.Y.S.2d 373, 591 N.E.2d 222 (1992); *Cover v. Cohen*, 61 N.Y.2d 261, 275, 473 N.Y.S.2d 378, 461 N.E.2d 864 (1984); Restatement (Second) of Torts § 402A cmt. h ("[w]here [manufacturer] has reason to anticipate that danger may result from a particular use [of its product, it] may be required to give adequate warning of the danger").

In this case, the issue is the extent to which a manufacturer has a duty to warn against the dangers of a third party's product that might be used in conjunction with its own. Generally, a manufacturer has no duty to warn against defects in such third-party products so long as the manufacturer had no control over the production of the defective product and did not place it into the stream of commerce. *See Rastelli,* 79 N.Y.2d at 297–98, 582 N.Y.S.2d 373, 591 N.E.2d 222 (finding no duty to warn "where [defendant] did not contribute to the alleged defect in a product, had no control over it, and did not produce it"). *See generally Tortoriello v. Bally Case, Inc.,* 200 A.D.2d 475, 606 N.Y.S.2d 625 (1st Dep't 1994). Even if the defective product is one of a limited number of third-party products that the manufacturer knows will be used in conjunction with its own, no duty arises so long as the manufacturer played no part in selecting the defective product. *See Tortoriello,* 606 N.Y.S.2d at 627.

In *Tortoriello,* the plaintiff was injured when she slipped on ice that had accumulated on the floor of a walk-in freezer. *Id.* at 626. She sued the freezer manufacturer, among others, claiming that it had a duty to warn her against the dangers of the quarry tile flooring inside the freezer unit. *Id.* at 626–27. The freezer manufacturer did not "manufacture, deliver, or install" the quarry tile flooring, but its literature did "depict[ ] quarry tile as one of three available floor materials for walk-in freezers." *Id.* at 627. Because there was no evidence that the freezer manufacturer played any role in selecting the type of flooring used, the Appellate Division held that it had no duty to warn plaintiff against defects in the tile. *Id.*

Where additional circumstances strengthen the connection between the manufacturer's product and the third par-ty's defective one, a duty to warn may arise. For example, the First Department has held that a manufacturer has a duty to warn against the dangers of a third-party product if the third-party product is necessary for the manufacturer's product to function. *See Rogers v. Sears, Roebuck and Co.,* 268 A.D.2d 245, 701 N.Y.S.2d 359, 359–60 (1st Dep't 2000) (manufacturer of barbeque grill could have duty to warn against dangers of third-party-manufactured propane tank where grill could not be used without tank). Furthermore, a duty to warn may arise if the manufacturer knows that its product will be outfitted with a third party's defective product pursuant to contract specifications. *Berkowitz v. A.C. & S., Inc.,* 288 A.D.2d 148, 733 N.Y.S.2d 410, 411–12 (1st Dep't 2001) (pump manufacturer might have duty to warn of dangers of asbestos exposure where "government provided certain specifications involving insulation" and manufacturer knew insulation would contain asbestos); *Hess v. Mack Trucks,* 159 A.D.2d 557, 552 N.Y.S.2d 423, 423–24 (2d Dep't 1990) (contract specified that manufacturer's product be fitted with third-party defective product; issue of fact as to whether defendant knew that its product was intended for use in conjunction with defective product).

**B. *Analysis***

Here, it is undisputed that Crane did not manufacture or place into the stream of commerce the asbestos to which Surre was exposed. (Stipulation ¶ 6). Furthermore, there is no evidence that Pacific boilers required asbestos insulation to function. Indeed, an employee manual from 1925 indicated that asbestos was only one of several materials that could be used to insulate Crane products. (*See* Doc. 20, Ex. 21 at 7) (identifying "asbestos ..., magnesia, felt, cork, wood fibre and hair" as possible insulators). The record does

not indicate that Crane played any role in Quality Insulation's decision to cover Pacific boilers with asbestos. There is also no evidence that asbestos insulation was specified for the exterior of any Pacific boiler. (*See* Pantaleoni Dep. at 45) (denying knowledge of any such specification). Under these circumstances, as a matter of New York law, Crane had no duty to warn Surre against the dangers of asbestos exposure. *See Rastelli,* 79 N.Y.2d at 297–98, 582 N.Y.S.2d 373, 591 N.E.2d 222; *Tortoriello,* 606 N.Y.S.2d at 625–26; *see also Smallwood v. Clairol, Inc.,* No. 03 CV 8394, 2005 WL 425491, at *1 (S.D.N.Y. Feb. 18, 2005) ("the court can decide as a matter of law that there is no duty to warn") (citation and internal quotation marks omitted); *Passante v. Agway Consumer Prods., Inc.,* 294 A.D.2d 831, 741 N.Y.S.2d 624, 626 (4th Dep't 2002) (same).

Surre argues that Crane had a duty to warn him because Crane "knew or should reasonably have known" or "had reason to foresee" that asbestos insulation "would be installed" on Pacific boilers. (*See* Pl.'s MDL Opp'n at 2, 4). But a duty to warn against the dangers of a third party's product does not arise from foreseeability alone. *See Tortoriello,* 606 N.Y.S.2d at 626. In *Tortoriello,* for example, the manufacturer listed quarry tile as one of three possible floorings for its walk-in freezers. *Id.* at 627. Surely it was foreseeable to the manufacturer that quarry tile might be installed on the floors of its freezers. Nevertheless, the Appellate Division declined to hold that the manufacturer had a duty to warn against the dangers of the quarry tile because the manufacturer played no role in selecting the quarry tile for the purchaser. *Id.*

The same reasoning applies here. Asbestos was one of several materials that could have been used to insulate Crane products. While this might have made its installation on Pacific boilers foreseeable to Crane, there is no evidence that Crane played any role in choosing the type of insulation Surre applied. Crane did not place into the stream of commerce the asbestos to which Surre was exposed, and there is no evidence that Crane had any control over its production. The use of asbestos to insulate Pacific boilers was no more foreseeable to Crane than the use of quarry tile was to the manufacturer in *Tortoriello.*

■ In support of his theory that foreseeability, by itself, gives rise to a duty to warn, Surre relies principally on the First Department's decision in *Berkowitz,* 733 N.Y.S.2d 410. *Berkowitz* is a one-paragraph opinion with no clear holding. The plaintiff in that case was exposed to asbestos while working on ships in the Brooklyn Navy Yard. The defendant manufactured pumps for the ships. The plaintiff alleged, *inter alia,* that the defendant had a duty to warn him against the hazards of asbestos insulation "on top of and around [the] pumps." (Berkowitz Opp'n Br. at 41). Defendant maintained that it did not manufacture or install the asbestos to which plaintiff was exposed. (Berkowitz S.J. Br. at 2). The court found that defendant might have a duty to warn because defendant's "own witness indicated that the government provided certain specifications involving [pump] insulation ... which [defendant] knew *would* be made out of asbestos." *Berkowitz,* 733 N.Y.S.2d at 412 (emphasis added). Thus, *Berkowitz* involved more than a mere possibility that asbestos might be used, and the case hardly stands for the broad proposition that a manufacturer has a duty to warn whenever it is foreseeable that its product will be used in conjunction with a

defective one.[3] Rather, the specifications there apparently *prescribed* the use of asbestos. *See id.* at 412. (*See also* Berkowitz Opp'n Br. at 41–42).

Even assuming Surre's "foreseeability" theory is valid as a legal matter, the argument is without merit factually. There is no evidence in the record that Crane knew or had reason to know that asbestos insulation would be applied to brand-new[4] Pacific boilers in 1963 or 1964—the time period during which Surre worked for Quality Insulation. None of the exhibits submitted by Surre sheds any light on what Crane knew or did not know in the 1960s with respect to how its new products were insulated.

The most recent exhibit is dated 1952. It is a catalog in which Crane stated that asbestos blocks were "ideal for boilers." (Doc. 20, Ex. 23 at 9). While this promotional language might constitute evidence that Crane knew or had reason to know that its boilers were being insulated with asbestos in 1952, or even a few years thereafter, it does not constitute evidence that Crane had such knowledge as late as 1963. Indeed, most of the evidence Surre submits in support of this assertion dates from the first half of the twentieth century, decades before Surre's exposure in this case. Some of these older exhibits indicate that Crane contemplated that its products be insulated with asbestos (*see, e.g.,* Doc. 20, Ex. 21; Doc. 20, Ex. 22 at 19[5]), but none specifically mentions the application of asbestos insulation to Pacific boilers.

At oral argument, the Court asked plaintiff's counsel if "there was any evidence in the record suggesting that Crane encouraged the use of asbestos ... after the early 1950s." (Nov. 21, 2011 Hearing Tr. at 22). Plaintiff's counsel cited the deposition of Anthony Pantaleoni, in which Mr. Pantaleoni affirmed that certain Crane supply houses sold asbestos furnace cement through the early 1970s. (Pantaleoni Dep. at 45–46, 126). The fact that Crane continued to sell asbestos furnace cement or any other asbestos-containing product, however, is not evidence that Crane knew asbestos was still being applied to the outside of its boilers.

After this exchange, the Court asked again if there was "any other evidence either in the record or not submitted ... suggest[ing] that Crane encouraged the use of asbestos or knew thereof continuing into the 1960s." (Nov. 21, 2011 Hearing Tr. at 25). Plaintiff's counsel responded that he was not aware of any. *Id.*

Therefore, there is not sufficient evidence in the record from which a reasonable jury could conclude that in the 1960s Crane should have foreseen the use of asbestos insulation on Pacific boilers. In essence, Surre argues that because a jury could find that Crane advocated the use of asbestos in 1952 to insulate its boilers, Crane knew, more than ten years later, that purchasers of its boilers would still be insulating newly-purchased boilers with asbestos. This is simply too great a leap.

---

**3.** Surre cites *Baum v. Eco–Tec, Inc.,* 5 A.D.3d 842, 773 N.Y.S.2d 161 (3d Dep't 2004), in support of this proposition as well. (*See* Pl.'s MDL Opp'n at 16). That case, however, involved the use of a type of dangerous product that the defendant manufactured itself. *Baum,* 773 N.Y.S.2d at 162–63 (discussing "air pipes originally supplied by Eco–Tech"). Therefore, the case was properly analyzed

under the *Liriano* foreseeability standard, not applicable here.

**4.** As noted above, the parties stipulated that Surre worked on "new" boilers. (Stipulation ¶ 4).

**5.** This exhibit does not appear to have been submitted to the MDL.

I acknowledge that two New York district court opinions and several New York state trial court opinions have denied summary judgment in cases similar to this one. *See, e.g., Gitto v. Cherterton,* No. 07–04771 (S.D.N.Y. Dec. 7, 2010); *Curry v. Am. Standard,* No. 08–10228, 2010 WL 6501559 (S.D.N.Y. Dec. 6, 2010); *DeFazio v. Chesterton,* 32 Misc.3d 1235(A), 2011 WL 3667717 (N.Y.Sup.Ct. Aug. 12, 2011); *Sawyer v. A.C. & S., Inc.,* No. 111152/99, 32 Misc.3d 1237(A), 2011 WL 3764074 (N.Y.Sup.Ct. June 24, 2011). In this case, however, on this record, there are not sufficient factual grounds to support a finding that Crane had a duty to warn. *Cf. Gitto,* No. 07–04771, slip op. at 3–4 (record contained evidence that Crane intended asbestos to be used with its products at the time of plaintiff's employment); *Curry,* No. 08–10228, slip op. at 3–4 (same).

### CONCLUSION

For the reasons stated above, Crane had no duty to warn Surre against the dangers of asbestos exposure. Accordingly, Crane's motion for summary judgment is GRANTED, and the claims against Crane are dismissed with prejudice.

**SO ORDERED.**