ADKINS, J.
In this products liability case, the content of a sixty-some year old instruction manual for a heavy piece of naval equipment may be the quintessential smoking gun. We consider failure to warn claims in strict liability and negligence brought by the widow of a naval machinist against manufacturers of heavy-duty pumps. We are asked to determine the interesting question of whether a manufacturer can be liable for failing to warn about the risk of harm from exposure to asbestos-containing replacement parts that it neither manufactured nor placed into the stream of commerce, but which were integral to the operation of its product.
As this case reaches us after a summary judgment in favor of the defendants, “we consider whether the plaintiffs offered sufficient admissible evidence in their opposition to summary judgment to allow a jury to consider their claims of negligence and strict liability against the corporate defendants.” Beatty v. Trailmaster Prods., Inc., 330 Md. 726, 739, 625 A.2d 1005, 1012 (1993). We state the facts as alleged by the plaintiffs.
FACTS AND LEGAL PROCEEDINGS
Ruth Belche May (“Petitioner”) is the widow of a machinist mate, Philip Royce May (“May”), who served on active duty in the United States Navy (“Navy”) for 20 years, from 1956 until 1976. Air & Liquid Systems Corp., Warren Pumps LLC, and IMO Industries, Inc. (“Respondents”) manufactured steam pumps that were sold to the Navy. The Navy used these pumps to move extremely hot and highly pressurized steam through the ship’s steam propulsion system. In accordance with the Navy’s specifications, the Respondents’ pumps contained asbestos gaskets and packing when the Respondents *6 first delivered the pumps to the Navy.[1] Asbestos was used in gaskets and packing as an insulating material because it could withstand the extremely high temperatures and pressures produced by the steam propulsion system.
As a machinist mate, May worked in the engine room of Navy ships. May testified that he would go to the log room and consult the instruction manuals on any piece of equipment he serviced.[2] It is undisputed that Respondents’ manuals did not contain any warnings regarding the danger of inhaling asbestos dust or directions to wear protective gear.[3] May’s duties aboard Navy ships included replacing asbestos gaskets and packing in the pumps of the ships’ steam propulsion systems. This work exposed him to airborne asbestos fibers. *7 When removing gaskets, May used tools that generated respirable dust. When installing a new gasket, May would have to shape it into the proper size, which also generated respirable dust. He testified that he had removed “[m]any gaskets, numerous gaskets, hundreds and hundreds and hundreds of gaskets.”
May, however, was never exposed to the asbestos gaskets and packing that these Respondents used in their products. He was exposed only after other Navy mechanics, who performed maintenance on Respondents’ pumps, replaced Respondents’ gaskets and packing with new components acquired from third parties — also containing asbestos.
In January 2012, May learned he was suffering from mesothelioma, a form of cancer that is commonly caused by asbestos exposure.[4] May and Petitioner filed suit in the Circuit Court for Baltimore City (“the Circuit Court”) in March 2012, naming numerous defendants, including the Respondents.[5] After completion of discovery, the Respondents moved for summary judgment on the ground that, as a matter of law, they had no duty to warn of the dangers of the asbestos-containing replacement parts that they neither manufactured nor placed into the stream of commerce. The Circuit Court granted the motions and the Court of Special Appeals affirmed. May v. Air & Liquid, Sys. Corp., 219 Md.App. 424, 426-27, 100 A.3d 1284, 1285 (2014).[6]
*8 Petitioner appealed and we granted her Petition for Writ of Certiorari.[7] Petitioner presented three questions for review, which we simplify into the following questions:
(1) Can Respondents be liable in negligence for injuries sustained by May?
(2) Can Respondents be strictly liable for injuries sustained by May?
Because we answer yes as to both questions, we shall reverse the judgment of the Court of Special Appeals and remand for further proceedings.
STANDARD OF REVIEW
 A circuit court may grant a motion for summary judgment if there is no dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Maryland Rule 2-501(f). “The court is to consider the record in the light most favorable to the non-moving party and consider any reasonable inferences that may be drawn from the undisputed facts against the moving party.” Mathews v. Cassidy Turley Md., Inc., 435 Md. 584, 598, 80 A.3d 269, 276 (2013). Because a circuit court’s grant of summary judgment hinges on a question of law, not a dispute of fact, an appellate court is to review whether the circuit court was legally correct without according deference to that court’s legal conclusions. Id.
DISCUSSION
In Twombley v. Fuller Brush Co., 221 Md. 476, 491-94, 158 A.2d 110, 118-19 (1960), we first recognized that a duty to warn can form the basis of a products liability action, and further developed the framework for this claim in Moran v. Faberge, Inc., 273 Md. 538, 332 A.2d 11 (1975). In Moran, we articulated the balancing of interests that is involved, and emphasized the role of warnings as a low cost precaution:
*9 To begin with we note that a manufacturer’s duty to produce a safe product, with appropriate warnings and instructions when necessary, is no different from the responsibility each of us bears to exercise due care to avoid unreasonable risks of harm to others. 2 Fowler Harper & Fleming James, The Law of Torts, § 28.3 (1956); William Prosser, The Law of Torts, § 31 (4th ed.1971). Whether any such unreasonable risk exists in a given situation depends on balancing the probability and seriousness of harm, if care is not exercised, against the costs of taking appropriate precautions. 2 Harper & James, supra, §§ 16.9, 28.4; Restatement (Second), Torts §§ 291-93, 298 (1965). However, we observe that in cases such as this the cost of giving an adequate warning is usually so minimal, amounting only to the expense of adding some more printing to a label, that this balancing process "will almost always weigh in favor of an obligation to warn of latent dangers, if the manufacturer is otherwise required to do so.
Id. at 543^14, 332 A.2d at 15 (emphasis added).
Failure to warn claims may be brought under a negligence or strict liability theory. Robert D. Klein, A Comparison of the Restatement (Third) of Torts: Products Liability and the Maryland Law of Products Liability, 30 U. Balt. L.Rev. 273, 288 (2001) (“In Maryland, failure-to-warn cases have either proceeded as negligence causes of action or ... as strict liability claims----”); see Gourdine v. Crews, 405 Md. 722, 743, 955 A.2d 769, 782 (2008) (“Duty, thus, is an essential element of both negligence and strict liability causes of action for failure to warn.”).
If the asbestos dust that May inhaled was from the original gaskets and packing in the pumps sold by Respondents, this would be a straightforward negligent and strict liability failure to warn case. The novelty of this case is that Petitioner asserts liability against Respondents even though May was never exposed to asbestos dust from the original gaskets and packing. The original asbestos gaskets and packing that Respondents incorporated into the pumps they sold to the Navy had already been replaced by other gaskets and packing *10 supplied by third parties long before May even began working for the Navy in 1956. This issue has been addressed in only a handful of cases, which we will discuss, infra.
Relying on Ford Motor Co. v. Wood, 119 Md.App. 1, 36 n. 7, 703 A.2d 1315, 1331 n. 7 (1998), Respondents contend that a manufacturer has a duty to warn only of products that it has placed into the stream of commerce “regardless of whether [its] duty to warn sounds in negligence or strict liability.” But their argument depends quite heavily on the assumption that a component part (asbestos gaskets and packing) should be separated from the product sold (the pump). In other words, Respondents see the product sold as the asbestos gaskets and packing, not the pump into which they were incorporated. We will test that assumption as we move through our analysis. We analyze the negligent and strict liability failure to warn issues in turn, even though the analytical basis for each overlaps with the other.[8]
I. Negligent Failure to Warn
Duty to Warn and Patton Factors
A prima facie products liability failure to warn claim grounded in negligence requires a showing of duty of care. See Moran, 273 Md. at 543-44, 332 A.2d at 15 (describing Section 388 of the Restatement (Second) of Torts (1965) “as a general principle in the duty to warn area”); see also Nissen Corp. v. Miller, 323 Md. 613, 619, 594 A.2d 564, 566-67 (1991) (explaining that “[t]he negligence count of a products liability claim comports with longstanding common law tort principles”). In determining the existence of a duty of care, we consider the following non-exclusive factors:
*11 the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered the injury, the closeness of the connection between the defendant’s conduct and the injury suffered, the moral blame attached to the defendant’s conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost and prevalence of insurance for the risk involved.
Patton v. U.S. Rugby Football, 381 Md. 627, 637, 851 A.2d 566, 571 (2004) (citing Ashburn v. Anne Arundel Cnty., 306 Md. 617, 627, 510 A.2d 1078, 1083 (1986)).
Here, the crux of Respondents’ argument is that they “did not owe [ ] May a duty of care for the fundamental reason that they did not manufacture or sell the injurious asbestos parts.” Respondents take umbrage at the notion that they can be liable for injuries from a replacement part that they never touched.
 Petitioner argues that the foreseeability of harm to a navy machinist who must replace the asbestos-containing components inside the pump “weighs heavily in favor of imposing a duty” to warn on Respondents. Our well-settled law reflects that the foreseeability of harm factor weighs heavily in favor of imposing a duty. See Remsburg v. Montgomery, 376 Md. 568, 583, 831 A.2d 18, 26 (2003) (foreseeability is “among the most important” factors considered in imposing a duty). Moreover, where a manufacturer’s product contains asbestos components and those components must be replaced periodically with new asbestos components, the risk of harm to a machinist removing the old and installing the new is highly foreseeable. Notably, one federal court was “not convinced” that a manufacturer should avoid liability under a failure to warn claim “where it designed its products to be used with asbestos-containing materials and actually incorporated asbestos-containing materials into the products it sold.” Quirin v. *12 Lorillard Tobacco Co., 17 F.Supp.3d 760, 771 (N.D.Ill.2014).[9] The court reasoned that “a jury could conclude that it was not just foreseeable, but inevitable, that the product would subject those working with it to the possible hazards of asbestos exposure” in this situation. Id.
But foreseeability alone is not sufficient to establish a duty. Remsburg, 376 Md. at 583, 831 A.2d at 26 (“While foreseeability is often considered among the most important of these factors, its existence alone does not suffice to establish a duty under Maryland law.”). Other factors must be considered. Bearing in mind the prominence of foreseeability of injury, we turn to those factors.
(i) The “degree of certainty that the plaintiff suffered the injury ” also weighs in favor of imposing a duty here. Patton, 381 Md. at 637, 851 A.2d at 571. For purposes of this appeal, Respondents do not contest that May suffered from and died as a result of mesothelioma.[10]
(ii) The “closeness of the connection between the defendant’s conduct and the injury suffered ” may prove to be the turning point for determining duty. Id. To be sure, the asbestos components Respondents placed in the pumps had been replaced by other equivalent parts supplied by third parties, and in that sense the Respondents’ conduct is somewhat removed from the injury. In our discussion of strict liability, we will address whether the replacement of these components constituted a “substantial change.” Here, though, we frame our analysis in the language of negligence, and focus on the sale of the pump and the conduct of Respondents in *13 deciding whether to warn the person(s) who will use and repair the pump.[11]
A federal district court decision, relying on New York state cases, proves to be instructive.[12] In Surre v. Foster Wheeler LLC, 831 F.Supp.2d 797, 801-02 (S.D.N.Y.2011), the court found that the defendant manufacturer had no duty to warn where there was no evidence that the boilers it sold required asbestos insulation to function.[13] The court, however, carefully distinguished circumstances where the connection between the defendant’s conduct and the injury was strengthened because asbestos was crucial to operation of the defendant’s product:
Where additional circumstances strengthen the connection between the manufacturer’s product and the third party’s defective one, a duty to warn may arise. For example, the First Department has held that a manufacturer has a duty to warn against the dangers of a third-party product if the third-party product is necessary for the manufacturer’s product to function. See Rogers v. Sears, Roebuck and Co., 268 A.D.2d 245, 701 N.Y.S.2d 359, 359-60 (1st Dep’t 2000) (manufacturer of barbeque grill could have duty to warn against dangers of third-party- *14 manufactured propane tank where grill could not be used without tank).
Id. at 801 (emphasis added).
Indeed, the court specifically considered the liability of a pump manufacturer who knew that asbestos would be incorporated in its pump:
Furthermore, a duty to warn may arise if the manufacturer knows that its product will be outfitted with a third party’s defective product pursuant to contract specifications. Berkowitz v. A.C. & S., Inc., 288 A.D.2d 148, 733 N.Y.S.2d 410, 411-12 (1st Dep’t 2001) (pump manufacturer might have duty to warn of dangers of asbestos exposure where “government provided certain specifications involving insulation” and manufacturer knew insulation would contain asbestos)[.]

Id.

[14]

Similar reasoning guided a federal district court in Illinois that, applying maritime law, carved out an exception to what it called the “bare metal defense”[15]:
In general, consistent with the bare metal defense, a manufacturer is not liable for materials it did not supply. But a duty may attach where the defendant manufactured a product that, by necessity, contained asbestos components, *15 where the asbestos-containing material was essential to the proper functioning of the defendant’s product, and where the asbestos-containing material would necessarily be replaced by other asbestos-containing material, whether supplied by the original manufacturer or someone else.
Quirin, 17 F.Supp.3d at 769-70 (emphasis added). That court denied the manufacturer’s motion for summary judgment. Id. at 772.
The present case, on appeal from a summary judgment, falls within the exception, carved out by the New York and Illinois cases, to the “bare metal defense.” Significantly, the record contains evidence supporting a reasonable inference that asbestos was the only available insulating material that could be used in the gaskets and packing in high-temperature operations. May testified that the pump manufacturers “had no other type of gasket at that time that would work, except the asbestos sheet gasket.” He stated that the pumps in question, which would pump matter reaching temperatures of 185 degrees or higher, needed asbestos gaskets — as opposed to other types of gaskets such as rubber, cork, paper, and vegetable fiber — because the “temperature of the heat is so much[,] it would burn [these other materials] up.”
In response to interrogatories, Air & Liquid Systems wrote that “[i]n the 1980s, gaskets and packing materials containing asbestos became generally unavailable while, at the same time, suitable replacement products ... were becoming available.” This indicates that suitable non-asbestos components did not exist when Respondents sold their pumps to the Navy in the 1940s and 1950s. Moreover, Henry Hartz, an IMO Industries engineer, testified that “there was a scramble in the industry to find something that would replace asbestos.” Thus, even if nothing “inherent in the pump design itself ‘required asbestos’ ” as Respondents contend, the asbestos gaskets and packing still needed to be replaced by other asbestos gaskets and packing because no other suitable material could be used with pumps that transported high-heat material.
*16 This evidence, taken together, is sufficient to permit a reasonable inference that asbestos was crucial to operation of the pumps at such high temperatures. We agree with the decisions described above that when the noxious component of the product is essential to its intended operation, the connection factor is strengthened, and strongly favors finding a duty to warn.
(iii) The “extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care ” is negligible in this case. Patton, 381 Md. at 637, 851 A.2d at 571. We have long recognized that the cost imposed on a manufacturer to give an adequate warning “is usually so minimal, amounting only to the expense of adding some more printing to a label.” Moran, 273 Md. at 543, 332 A.2d at 15. Here, Respondents supplied instruction manuals with their pumps and could easily have included in those manuals a warning that asbestos dust was dangerous, and a directive to wear protective gear when working around the pumps. Imposing a duty to warn on manufacturers of pumps containing asbestos gaskets and packing that require periodic replacement with other asbestos gaskets and packing would be a small burden relative to the high risk of injury and death caused by exposure to asbestos. We see no adverse consequences to the community in imposing this duty. Requiring a warning in an instruction manual for a large piece of naval equipment will neither cause a proliferation of warnings, nor be so costly as to burden the Respondents. In all, the light burden on manufacturers favors imposition of a duty.
(iv) Moral blame. See Patton, 381 Md. at 637, 851 A.2d at 571. Petitioner assigns moral blame to Respondents for failing to warn users of their pumps about the known danger they would face. Respondents disclaim any moral blame on grounds that they supplied critical equipment to the Navy as part of a war effort.[16] If Respondents knew or should have *17 known of the dangers of asbestos but still sold a product containing asbestos without warning of the dangers, they should be assigned some moral blame. Cf. Georgia Pac., LLC v. Farrar, 432 Md. 523, 535, 69 A.3d 1028, 1036 (2013) (stating that “the danger of exposure to asbestos in the workplace was well-recognized at least by the 1930s.... ”); Eagle-Picher Indus., Inc. v. Balbos, 326 Md. 179, 194-97, 604 A.2d 445, 452-53 (1992) (concluding that sufficient evidence existed for a jury to find that asbestos manufacturer knew or should have known of the dangers of asbestos prior to 1944). That Respondents were capable of timely providing the pumps to the Navy as part of a war effort mitigates moral blame. Overall, this factor tilts slightly in favor of Respondents.
(v) The “policy of preventing future harm ” is a neutral factor. See Patton, 381 Md. at 637, 851 A.2d at 571. There is evidence that manufacturers ceased using asbestos in the mid-1980s when a safer component became available. That lessens the significance of this factor. But it is difficult to forecast *18 what impact our decision to find a duty under these circumstances might have on safety procedures, including warnings, of other manufacturers using other expendable, potentially dangerous component parts.
(vi) The “availability, cost and prevalence of insurance.” Id. Petitioner highlights that duty is determined at the time of sale and that insurance was generally available to cover the risks of asbestos at the time Respondents sold their pumps to the Navy. Petitioner accentuates that not only was insurance for these risks available, but also that Respondents obtained insurance coverage. Indeed, Respondents implicitly acknowledge in their brief that they have some pre-1986 insurance coverage available to them.
Respondents, however, frame this factor as whether insurance for the risk could be procured today and cite Coates v. Southern Maryland Electric Cooperative, Inc., for the proposition that this factor is forward-looking. 354 Md. 499, 731 A.2d 931 (1999). The issue in Coates was whether a utility company owed a duty to plaintiffs, who crashed into a utility pole in a car accident. Id. at 503, 731 A.2d at 933. Respondents assert that one reason the court in Coates rejected the proposed duty was because it was concerned that imposing a duty would “quickly remove the availability of affordable liability insurance for utilities.” Id. at 524, 731 A.2d. at 944. The horse is already out of the barn on this one — most, if not all, insurance policies now contain asbestos exclusions. Respondents even recognize this point when they declare “that liability for coverage for asbestos risks has been unavailable in the market at any price” since the mid-1980s. Thus, the availability of insurance counsels in favor of imposing a duty.
Balancing the Factors
As we have said, in negligence cases involving personal injury, the principal determinant of duty is foreseeability. Doe v. Pharmacia & Upjohn Co., Inc., 388 Md. 407, 416, 879 A.2d 1088, 1093 (2005); Jacques v. First Nat’l Bank of Md., 307 Md. 527, 534-35, 515 A.2d 756, 759-60 (1986). The foreseeability of harm to workers servicing pumps with asbes *19 tos gaskets and packing is especially strong where a manufacturer knows or should know that these components are necessary to the proper functioning of its product and must be replaced periodically. Evaluating the other factors, we consider that four factors favor imposing a duty, one is neutral, and only one slightly tips against imposing a duty. When these factors are considered along with the predominant foreseeability factor, finding a duty becomes the clear choice. Thus, we conclude that the duty to warn in this context exists in the limited circumstances when (1) a manufacturer’s product contains asbestos components, and no safer material is available; (2) asbestos is a critical part of the pump sold by the manufacturer; (3) periodic maintenance involving handling asbestos gaskets and packing is required; and (4) the manufacturer knows or should know of the risks from exposure to asbestos.
We have recognized that “[a]t its core, the determination of whether a duty exists represents a policy question of whether the specific plaintiff is entitled to protection from the acts of the defendant.” Gourdine, 405 Md. at 745, 955 A.2d at 783; see Patton, 381 Md. at 637, 851 A.2d at 571 (“In determining whether a duty exists, ‘it is important to consider the policy reasons supporting a cause of action in negligence.’ ”) (quoting Valentine v. On Target, Inc., 353 Md. 544, 550, 727 A.2d 947, 950 (1999)).
Respondents warn that imposing liability here would be poor public policy and inflict “crushing transaction costs for the ongoing support of litigation against defendants who did not manufacture or sell the asbestos components encountered by plaintiffs.” As for public policy in this context, we look not to a defendant’s litigation costs, but rather, the well-settled principles of tort law, and its foremost question of duty. Here we impose a duty on a manufacturer to warn when its product not only has asbestos components, but also cannot function properly without these hazardous components, and a machinist will be exposed to the asbestos during necessary, periodic replacement of the parts with other asbestos-containing parts. This is a narrow and limited duty. Cabining the duty in this *20 way serves the policy of preventing harm without exposing manufacturers to limitless liability for products they did not manufacture or sell.
We have seriously considered the California Supreme Court’s decision in O’Neil v. Crane Co., 53 Cal.4th 335, 135 Cal.Rptr.3d 288, 266 P.3d 987 (2012) — a case cited frequently by Respondents as a seminal case supporting their claim that manufacturers cannot be held liable for harm arising from asbestos-containing component parts supplied by third parties.[17] The California high court ruled against the plaintiffs on grounds that the defendants did not place into the stream of commerce the product that injured the plaintiffs. Id. 135 Cal.Rptr.3d 288, 266 P.3d at 991. But even O’Neil recognized there might be circumstances where a manufacturer could be strictly liable for products it has not placed into the stream of commerce.[18]
The California Supreme Court explicitly held that “a product manufacturer may not be held liable in strict liability or negligence for harm caused by another manufacturer’s product unless the defendant’s own product contributed substan *21 tially to the harm, or the defendant participated substantially in creating a harmful combined use of the products.” Id. 135 Cal.Rptr.3d 288, 266 P.3d at 991 (emphasis added).[19] The O’Neil court thus recognized that a manufacturer is generally not liable for component parts it did not touch, but can be liable in narrow circumstances.
Moreover, the court based its decision at least in part on its reading of the factual record to mean that the manufacturer’s pumps and valves did not need asbestos-containing components to function properly. Id. 135 Cal.Rptr.3d 288, 266 P.3d at 1004 (asserting that “the evidence did not establish that defendants’ products needed asbestos-containing components or insulation to function properly”) (emphasis added). Other courts have followed O’Neil in drawing this distinction and acknowledge that different evidentiary records can yield different determinations of liability. See Morgan v. Bill Vann Co., Inc., 969 F.Supp.2d 1358, 1368 (S.D.Ala.2013) (“The record is devoid of evidence from which a reasonable fact finder could conclude that the Durco pumps in use at Alabama River Pulp were designed to require asbestos packing, to the exclusion of other kinds of packing materials.”) (emphasis in original).
Applying our four-part test in this case, it is undisputed that Respondents sold pumps with asbestos-containing components to the Navy. In contrast to O’Neil where “the evidence did not establish that defendants’ products needed asbestos-containing components or insulation to function properly,” 135 Cal.Rptr.3d 288, 266 P.3d at 1004, the record here contains *22 evidence that Respondents’ pumps required asbestos-containing components to function because no other suitable material could be used in high temperature applications. This case is similar to Quirin, where the court distinguished the record before it from that in O’Neil in concluding that manufacturers had a duty to warn. See Quirin, 17 F.Supp.3d at 770 (“[I]n contrast [to O’Neil ], the record contains sufficient evidence for a reasonable jury to conclude that [the manufacturer’s] valves required asbestos-containing components to function in the high-heat applications for which they were marketed.”). The Quiñn court noted that although the manufacturer cited evidence that non-asbestos materials could be used with its product, “nothing in the record indicate[d] that such materials were suitable for high-heat applications.” Id. (emphasis added). Respondents’ manuals also contained sections on maintenance that detailed how to replace gaskets and packing, as well as a section on how to order replacement parts — but no warning about the danger of asbestos. May testified that he removed “hundreds and hundreds and hundreds of gaskets” in the over 18 years he served in the Navy.
In addition, the record contains sufficient evidence for a reasonable jury to conclude that warnings, had they been given, would have reached May. May testified that he would go to the log room and consult the instruction manuals on any piece of equipment he serviced. Moreover, as Respondents’ state of knowledge about the dangers of asbestos was not the subject of their motion for summary judgment, we do not address the sufficiency of evidence adduced by Petitioner on this issue. See Higginbotham v. Pub. Serv. Comm’n of Md., 412 Md. 112, 147, 985 A.2d 1183, 1203 (2009) (“It is a ‘rule of Maryland procedure that, in appeals from grants of summary judgment, Maryland appellate courts, as a general rule, will consider only the grounds upon which the [trial] court relied in granting summary judgment.’ ”) (emphasis omitted) (quoting Lovelace v. Anderson, 366 Md. 690, 695, 785 A.2d 726, 729 (2001)). Summary judgment on Petitioner’s negligent failure *23 to warn claims was thus inappropriate.[20]
II. Strict Liability Failure to Warn
In Phipps v. General Motors Corp., 278 Md. 337, 352-53, 363 A.2d 955, 963 (1976), Maryland embraced the concept of strict liability as a basis for products liability and expressly adopted the elements contained in the Restatement (Second) of Torts § 402A (1965). Section 402A provides in pertinent part:
(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
(a) the seller is engaged in the business of selling such a product, and
(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
In Owens-Illinois, Inc. v. Zenobia, we considered Comment j of the Restatement § 402A applicable to failure to warn claims predicated on strict liability. 325 Md. 420, 436, 601 A.2d 633, 641 (1992) (“The Phipps opinion expressly indicated that our adoption of § 402A included the official comments.”) (citing Phipps, 278 Md. at 346, 363 A.2d at 959-60). Comment j explains that a seller is only required to give a warning “if he has knowledge, or by the application of reasonable, developed *24 human skill and foresight should have knowledge” of the product’s dangerous propensity. Restatement (Second) of Torts § 402A cmt. j. Relying on Comment j, the Court in Zenobia thus determined that knowledge is an essential element of a strict liability failure to warn claim. 325 Md. at 437, 601 A.2d at 641.
Consequently, we recognized that “in a failure to warn case governed by the Restatement § 402A and Comment j, negligence concepts to some extent have been grafted onto strict liability.” Zenobia, 325 Md. at 435, 601 A.2d at 640; see David G. Owen, Products Liability Law § 10.4, at 668 (3d ed. 2015) (“[C]omments j and k[] address the duty to warn in negligence terms and effectively provide that the duty to warn under § 402A is limited to foreseeable risks.”). More recently, we acknowledged that “negligence concepts and those of strict liability have ‘morphed together’ ... in failure to warn cases.” Gourdine, 405 Md. at 743, 955 A.2d at 782; id. (“Duty, thus, is an essential element of both negligence and strict liability causes of action for failure to warn.”).[21]
*25 As with negligence, Respondents argue that they cannot be strictly liable for asbestos components they have not manufactured, marketed, sold, or otherwise placed into the stream of commerce. Ignoring the economic benefit from the sale of the pump itself, Respondents contend that strict liability is justified only when the defendant derives an economic benefit from its component parts, as well as the ability to test and inspect the component. They claim that these justifications are not advanced by imposing strict liability on a manufacturer for component parts that it did not place into the stream of commerce. Respondents even quote Gourdine, 405 Md. at 739-40, 955 A.2d at 779-80, in asserting that Maryland law holds that the “framework for analysis in negligent failure to warn cases.... substantially mirrors that of a strict liability action.”
Because of the intersections between strict liability and negligent failure to warn claims, we conclude that a manufacturer has a duty to warn of asbestos-containing replacement components that it has not placed into the stream of commerce in strict liability in the same narrow circumstances as in negligence. That is, a manufacturer will have a duty to warn of asbestos-containing replacement components that it has not placed into the stream of commerce in strict liability only where (1) its product contains asbestos components, and no safer material is available; (2) asbestos is a critical part of the pump sold by the manufacturer; (3) periodic maintenance involving handling asbestos gaskets and packing is required; and (4) the manufacturer knows or should know of the risks from exposure to asbestos.[22]
*26 In strict liability, Respondents’ theory that no duty arises when the defendant never touched the offending asbestos components is equivalent to the defense that the product was substantially modified after sale. But, Petitioner rightly counters that the duty to warn is only absolved if there is substantial modification to the product between the time of sale and when the injured party encountered the product. See Owen, supra at § 15.3, at 958 (asserting that “The Restatement (Second) of Torts ... address[es] this issue in terms of whether the dangerous defect was in the component at the time it left the component supplier’s control, or whether the danger was introduced into the product through ‘further processing or other substantial change.’ ”). As the Court of Special Appeals explained in Banks v. Iron Hustler Corp., strict liability “under § 402A is expressly conditioned upon the product reaching the user ‘without substantial change in the condition in which it is sold.’ ” 59 Md.App. 408, 432, 475 A.2d 1243, 1255 (1984) (quoting Restatement (Second) of Torts § 402A(l)(b)).
Petitioner asserts and Respondents do not deny that the asbestos gaskets and packing that replaced the component *27 parts in the original pumps sold by Respondents were identical to the original components.
Our four elements necessary to establish duty in this context, stated above, ensure compliance with the substantial modification doctrine. Part of the first element — that a manufacturer’s product contains asbestos — requires that a manufacturer’s product be defective when it leaves the manufacturer’s hands. The second element — the product will not function properly without using asbestos — requires that the manufacturer’s product remains defective when the user of that product suffers harm. The necessary replacement of asbestos components with identical components cannot be said to constitute a substantial modification. Consequently, our test for determining whether a manufacturer has a duty to warn of asbestos-containing replacement components that it has not placed into the stream of commerce incorporates the substantial modification doctrine.
We are not persuaded by Respondents’ argument that the asbestos gaskets and packing themselves are the “product” for purposes of strict liability analysis. Common sense tells us that the pumps were what Respondents sold to the Navy, and the gaskets and packing are included within that product.
We have studied Ford Motor Co. v. Wood and the out-of-state cases cited by Respondents refusing to impose any liability when the offensive product was a replacement from a third party.[23] But we fault these cases for failing to recognize *28 the exception to the “bare metal defense” when the ultimate product sold — here, the pump — cannot function properly without the expendable and noxious component. See Surre, 831 F.Supp.2d at 801; Quirin, 17 F.Supp.3d at 769-70; cf. O’Neil, 135 Cal.Rptr.3d 288, 266 P.3d at 996 n. 6, 1005. When an expendable noxious component such as asbestos is essential to a product that is sold, we should not consider the expendable component as the “product.” Rather we should focus on the final product, the pump. It is undisputed that the pump contained asbestos, and there is sufficient evidence that the asbestos was essential to its operation, needed periodic replacement, and was dangerous. Finally, as Respondents’ state of knowledge regarding the dangers of asbestos was not the subject of their summary judgment motion, we do not address the sufficiency of evidence adduced by Petitioner on this issue. See Higginbotham, 412 Md. at 147, 985 A.2d at 1203. Thus, Petitioner has supplied sufficient evidence to survive Respondents’ motion for summary judgment.
We must stress that a manufacturer is generally not strictly liable for products it has not manufactured or placed into the stream of commerce. As the Court in Phipps cautioned: “Despite the use of the term ‘strict liability’ the seller is not an insurer, as absolute liability is not imposed on the seller for any injury resulting from the use of his product.” *29 278 Md. at 351-52, 363 A.2d at 963. Our holding that a manufacturer has a duty in strict liability to warn of asbestos-containing replacement components that it has not placed into the stream of commerce in limited circumstances is in accord with the recognition that the reach of strict liability is not boundless. Mindful of the Court’s admonition in Phipps that a seller is not an insurer, we carefully decline to extend the duty to warn to all instances when a manufacturer can foresee that a defective component may be used with its product.
CONCLUSION
This Court concludes that a manufacturer will have a duty to warn under negligence and strict liability when (1) its product contains asbestos components, and no safer material is available; (2) asbestos is a critical part of the pump sold by the manufacturer; (3) periodic maintenance involving handling asbestos gaskets and packing is required; and (4) the manufacturer knows or should know the risks from exposure to asbestos.
We agree with Petitioner that Maryland law strikes a balance between the need for persons injured by products to obtain compensation and justice and the canon that product manufacturers are not absolute insurers of their products. To strike this balance, we preserve the rule that a company is not generally liable for asbestos-containing parts it does not manufacture or place into the stream of commerce, but recognize that narrow circumstances exist where a manufacturer can be liable for products it has not touched. Accordingly, we reverse the Court of Special Appeals’ affirmance of summary judgment on Petitioner’s duty to warn negligent claim and strict liability failure to warn claim.
JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REMAND THE CASE TO THE CIRCUIT COURT FOR FURTHER PROCEEDINGS *30 CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY RESPONDENTS.
BATTAGLIA and WATTS, JJ., dissent.

. Gaskets are mechanical seals that prevent the leakage of gas or fluids from valves. Packing is insulation inserted between a valve stem and valve cover to maintain a seal. It is not clear from the record whether the Respondents themselves manufactured the original asbestos gaskets and packing or whether they bought them from third parties and incorporated these parts into their final product. Regardless, Respondents placed asbestos gaskets and packing into the stream of commerce when they first sold steam pumps to the Navy.

. Respondents dispute what inference should be drawn from May’s testimony that he reviewed the instruction manuals, and contend that it cannot be inferred that May relied on the manuals for the purpose of determining whether replacement gaskets and packing for any pump should contain asbestos. As this appeal is from a grant of summary judgment, May, the non-moving party, is entitled to the benefit of all reasonable inferences to be drawn from the evidence. Educ. Testing Serv. v. Hildebrant, 399 Md. 128, 140, 923 A.2d 34, 41 (2007). Under our summary judgment standard, his testimony that he checked the manual before working on the machine is sufficient to survive Respondents’ motion. Respondents also contend that May’s testimony about routinely checking the manuals was more an ideal than a reality because he also testified that if there were "two pumps of the same brand or look alike or work alike, you may only have one book. Over time they disappear.” Again, in this appeal, we must view all the facts in the light most favorable to the non-moving party and also draw all reasonable inferences in that party’s favor. Under this standard, Respondents' factual disputes are unavailing.

. Air & Liquid Systems Corp., Warren Pumps LLC, and IMO Industries, Inc. filed one brief for purposes of this appeal. We therefore look to testimony in the record as evidence admissible against all Respondents solely for purposes of this appeal.

. Included in the record is expert deposition testimony, filed by Petitioner in opposition to summary judgment, saying that "all of [May’s] exposures to asbestos above background levels [were] causes of Mr. May’s mesothelioma.” The expert explained that “this is a dose dependent disease and it relates to cumulative exposures, and these are medical causes of his mesothelioma.”

. Other defendants included the manufacturers of the asbestos-containing replacement parts that May replaced and installed.

. At the Circuit Court, Respondents contested medical causation, but that was not the issue relied upon by the trial judge as a ground for granting the motions. Medical causation remains an open issue on remand.

. May died in April 2014.

. Kennedy v. Mobay Corp., 84 Md.App. 397, 410, 579 A.2d 1191, 1198 (1990) (" 'The distinction between negligence and strict liability lessens considerably in failure to warn cases.’ ”) (quoting Werner v. Upjohn Co., Inc., 628 F.2d 848, 858 (4th Cir.1980)). See infra Part II for discussion of Owens-Illinois, Inc. v. Zenobia, 325 Md. 420, 601 A.2d 633 (1992) and Gourdine v. Crews, 405 Md. 722, 955 A.2d 769 (2008).

. The court applied maritime law to the negligence claims of a machinist mate who was diagnosed with mesothelioma following exposure to asbestos on a Navy vessel. Quinn v. Lorillard Tobacco Co., 17 F.Supp.3d 760, 767 (N.D.Ill.2014).

. Because medical causation was an issue raised by Respondents at the Circuit Court, that will remain an open issue on remand.

. Indeed, the danger posed by removing asbestos-containing gaskets and packing put into the stream of commerce by a manufacturer is exactly the same as the danger posed by removing gaskets and packing that a manufacturer has not touched.

. Although the New York Court of Appeals has not directly addressed the issue, it will consider whether manufacturers can be liable for failure to warn about hazards in products that they have not placed into the stream of commerce in a case stemming from an appeal as of right. See In re New York City Asbestos Litig. (Dummitt v. A.W. Chesterton), 121 A.D.3d 230, 990 N.Y.S.2d 174 (2014), appeal docketed, No. APL-201400209 (N.Y. Aug. 1, 2014).

. As the court explained:
[TJhere is no evidence that Pacific boilers required asbestos insulation to function. Indeed, an employee manual from 1925 indicated that asbestos was only one of several materials that could be used to insulate Crane products. (See Doc. 20, Ex. 21 at 7) (identifying "asbestos ..., magnesia, felt, cork, wood fibre and hair" as possible insulators).
Surre v. Foster Wheeler LLC, 831 F.Supp.2d 797, 801 (S.D.N.Y.2011).

. Respondents give short shrift to the Berkowitz decision cited by the court in Surre, highlighting Surre’s characterization of Berkowitz as "a one-paragraph opinion with no clear holding.” See Surre, 831 F.Supp.2d at 802. In making this statement, however, the court in Surre was simply rejecting the plaintiff's reading of Berkowitz as standing for the proposition that a manufacturer has a duty to warn whenever it is foreseeable that asbestos would be used with its products:
Berkowitz involved more than a mere possibility that asbestos might be used, and the case hardly stands for the broad proposition that a manufacturer has a duty to warn whenever it is foreseeable that its product will be used in conjunction with a defective one. Rather, the specifications [in Berkowitz ] apparently prescribed the use of asbestos.
Id. at 802-03 (emphasis in original) (citing Berkowitz v. A.C. & S., Inc., 288 A.D.2d 148, 733 N.Y.S.2d 410, 412 (2001)).

. The court explained the “bare metal defense” as a position that "manufacturers ... are not liable for the dangers of asbestos-containing replacement parts supplied by a third party.” Quirin, 17 F.Supp.3d at 768.

. Respondents cast blame on the Navy and rely in part on the expert report of Rear Admiral David P. Sargent, Jr. for the proposition that May's injury is not properly attributable to them. In his expert report, *17 Sargent describes how the Navy "dictated and ... reviewed and approved the contents of all technical manuals, including any cautionary language or emphasis.” That the instruction manuals reviewed by May did not contain warnings because the Navy dictated whether warnings could be included in the manuals is not relevant to this appeal. This fact may be relevant to the government contractor defense, which was not the basis for the Circuit Court’s summary judgment ruling. See Boyle v. United Techs. Corp., 487 U.S. 500, 512, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988) (holding a state-prescribed duty of care may be preempted when a contractor cannot comply with both this duty and its contractual obligations to the federal government). Although the Circuit Court was "troubled” by the issue of the manuals, the court found that the question "boil[ed]” down to whether a manufacturer — be it a civilian contractor, military contractor, or some other type of manufacturer — had a duty to warn of component parts that it never touched. On a ruling granting summary judgment, an appellate court will ordinarily only review the issue decided by the trial court. See Higginbotham v. Pub. Serv. Comm’n of Md., 412 Md. 112, 147, 985 A.2d 1183, 1203 (2009) ("It is a 'rule of Maryland procedure that, in appeals from grants of summary judgment, Maryland appellate courts, as a general rule, will consider only the grounds upon which the [trial] court relied in granting summary judgment.’ ") (emphasis omitted) (quoting Lovelace v. Anderson, 366 Md. 690, 695, 785 A.2d 726, 729 (2001)). Accordingly, the government contractor defense, and others, may be addressed on remand.

. Schwartz v. Abex Corp., 106 F.Supp.3d 626, 644 n. 58 (E.D.Pa.2015) (describing O'Neil as "generally considered to be a clear recognition” that manufacturers cannot be held liable for the dangers of asbestos-containing component parts supplied by third parties); Victor E. Schwartz & Mark A. Behrens, Asbestos Litigation: The “Endless Search for A Solvent Bystander,” 23 Widener L.J. 59, 92 (2013) (stating that the California Supreme Court’s unanimous decision in O’Neil "is perhaps the most significant” case holding that defendants are only responsible for harms caused by their own products).

. Several courts point out that O’Neil does not stand for the proposition that a manufacturer can never be liable for component parts it has not manufactured or placed into the stream of commerce. See, e.g., Willis v. Buffalo Pumps Inc., 34 F.Supp.3d 1117, 1123 (S.D.Cal.2014) ("While O’Neil limited a defendant's liability for third-party components, it did not eliminate the possibility.”); Quirin, 17 F.Supp.3d at 770 (observing that the court in O’Neil "qualified its conclusion that the defendant ... could not be held liable for products manufactured by third parties”); Schwartz, 106 F.Supp.3d at 644 n. 58 (noting that O’Neil "contains indications of potential exceptions to the general rule [that a manufacturer is not liable for products it has not placed into the stream of commerce]”).

. The court put it this way later in the opinion:
We reaffirm that a product manufacturer generally may not be held strictly liable for harm caused by another manufacturer's product. The only exceptions to this rule arise when the defendant bears some direct responsibility for the harm, either because the defendant's own product contributed substantially to the harm, or because the defendant participated substantially in creating a harmful combined use of the products.
O’Neil v. Crane Co., 53 Cal.4th 335, 135 Cal.Rptr.3d 288, 266 P.3d 987, 1005 (2012).

. To the extent that Respondents argue that May would not have heeded any warnings had they been printed in the instruction manuals, there is a presumption that a plaintiff will heed any warning given. See U.S. Gypsum Co. v. Mayor & City Council of Balt., 336 Md. 145, 162, 647 A.2d 405, 413 (1994) (citations omitted) (asserting that Maryland courts have "long recognized a presumption that plaintiffs would have heeded a legally adequate warning had one been given”); see also Eagle-Picher Indus., Inc. v. Balbos, 326 Md. 179, 229, 604 A.2d 445, 469 (1992) (noting that "[t]he Maryland ‘presumption’ at a minimum means that jurors are entitled to bring to their deliberations their knowledge of the 'natural instinct’ and ‘disposition’ of persons to guard themselves against danger”).

. This is not to say that strict liability and negligent failure to warn claims are equivalent. See Mazda Motor of Am.., Inc. v. Rogowski, 105 Md.App. 318, 325-26, 659 A.2d 391, 394-95 (1995), cert. denied, 340 Md. 501, 667 A.2d 342 (1995) (asserting that negligent and strict liability claims for an alleged failure to warn bear "a strong resemblance” to one another, yet espousing that there is a distinction between negligent and strict liability failure to warn claims); Morgan v. Graco Children’s Prods., Inc., 184 F.Supp.2d 464, 466 (D.Md.2002) (“It is clear from this case [Rogowski ] and others in Maryland that failure to warn as a cause of action only states a claim in the context offonns of tort liability recognized in Maryland.”) (emphasis added); see also Banks v. Iron Hustler Corp., 59 Md.App. 408, 422, 475 A.2d 1243, 1250 (1984) ("There is nothing in Phipps to suggest that the traditional action for negligence was to be subsumed in or replaced by the newly adopted strict liability. Indeed, as subsequent cases make clear, strict liability merely takes its place alongside negligence ... as an alternative basis of liability.”).
These two theories of liability are also distinct from a practical standpoint. In Zenobia, we observed that the availability of contributory negligence as a defense is an important difference between strict liability and negligent failure to warn claims:
We note that despite the overlap of negligence principles in a strict liability failure to warn case, strict liability differs from a negligence *25 cause of action in that contributory negligence is not a defense to a strict liability claim. Ellsworth v. Sherne Lingerie, Inc., 303 Md. 581, 597-98, 495 A.2d 348, 356-57 (1985). In addition, in light of the other comments to § 402A of the Restatement (Second) of Torts, which apply in defective design, defective construction, and failure to warn cases, there are some differences between a negligent failure to warn case and a failure to warn based upon § 402A and Comment j.
325 Md. at 435 n. 7, 601 A.2d at 640 n. 7.

. The dissent asserts that there is no need to weigh the factors articulated in Patton to determine whether Respondents owed May a *26 duty. The dissent states that "Patton involved negligence, not strict products liability; as such, in Patton, we neither commented on nor added to the understanding of what is required to bring a case for strict products liability.” The dissent ignores or misunderstands the record in this case. Petitioner brought failure to warn products liability claims grounded in both strict liability and negligence. Thus, contrary to the dissent's maintaining that Patton "offers zero support for the conclusion that Respondents had a duty to warn,” it is wholly appropriate to consider the Patton factors in analyzing Petitioner’s negligent failure to warn claim. Moreover, as to the pertinence of the Patton factors in examining Petitioner’s strict liability failure to warn claim, the dissent overlooks our recognition that the framework for analysis in strict liability failure to warn cases "substantially mirrors” that of a negligent failure to warn action. Gourdine, 405 Md. at 739-40, 955 A.2d at 779-80; 'see generally David G. Owen, Products Liability Law § 9.2, at 561 (3d ed.2015) (discussing how "most courts now agree that these types of claims [negligent and strict liability failure to warn] are nearly, or entirely, identical....”). Once we have determined the existence of a duty to warn for the negligence claim, we are hard-pressed to deny a comparable duty in the strict liability failure to warn claim.

. See Lindstrom v. A-C Prod. Liab. Trust, 424 F.3d 488, 492, 494-95 (6th Cir.2005); Faddish v. Buffalo Pumps, 881 F.Supp.2d 1361, 1368, 1372-73 (S.D.Fla.2012); Thurmon v. A.W. Chesterton, Inc., 61 F.Supp.3d 1280, 1283, 1286 (N.D.Ga.2014).
Petitioner and Respondents discuss three Washington Supreme Court decisions in their dispute over whether a manufacturer can be strictly liable for asbestos-containing replacement parts that it did not place into the stream of commerce. Compare Simonetta v. Viad Corp., 165 Wash.2d 341, 197 P.3d 127, 138 (2008) (holding "[b]ecause [product manufacturer] was not in the chain of distribution of the dangerous product, we conclude not only that it had no duty to warn under negligence, but also that it cannot be strictly liable for failure to warn”), and Braaten v. Saberhagen Holdings, 165 Wash.2d 373, 198 P.3d 493 *28 (2008) (holding no duty to warn of the dangers of exposure to asbestos in products it did not manufacture and for which the manufacturer was not in the chain of distribution), with Macias v. Saberhagen Holdings, Inc., 175 Wash.2d 402, 282 P.3d 1069 (2012) (holding duty to warn of exposure to asbestos when manufacturers were not in the chain of distribution of the asbestos-containing products).
The most recent of these cases favors a duty to warn, but it does not overrule the earlier cases concluding that no duty exists. See Macias, 282 P.3d at 1083 ("While the chain-of-distribution requirement is undoubtedly the general rule ... it is not absolute.”). The opaqueness of Washington law makes it an uncertain predicate for either the majority or dissent. See Schwartz, 106 F.Supp.3d at 648 (“[I]t is not entirely clear from the rationale set forth in Macias whether and how a product manufacturer (such as a valve or pump manufacturer) would be liable under Washington law for internal component parts (such as replacement gaskets and packing) that it did not manufacture or supply that are used in connection with its product.”).